# Kyger v. Ryley.

I. PAYMENT: K, holding R's note and mortgage, lodges, in company with another person, at R's house one night, and in the morning produces the note, and demands payment, which R is unable to pay: whereupon K says he will credit R's charge for the lodging, amounting to one dollar, upon the note; to which R does not assent: *held* no payment to take the case out of the Statute of Limitations.

II. MORTGAGE: In this State, if a recovery upon a note secured by a mortgage be barred by the Statute of Limitations, an action for foreclosure is also barred.

*Argument* 1. The note is the principal, and the mortgage an incident thereto.

2. The mortgage is, upon the mortgagee's decease, personal assets.

3. It is a mere pledge for the payment of the debt, or performance of an obligation.

4. The mortgagor retains the right of possession up to the confirmation of sale had upon the decree of the Court.

This was an action brought on the twenty-second day of September, 1865, in the District Court for Washington County, for the foreclosure of a mortgage made by Ryley, the defendant, to Kyger, the plaintiff, on the 23d of September, 1857, to secure a note of that date, made by the former to the latter, payable one year after its date.

The petition alleged a payment of one dollar, made by the defendant on the 4th of September, 1865.

The answer denied the payment, and pleaded the statute limiting actions on notes, specialties, &c., to five years.

KYGER *v.* RYLEY.

The proofs showed, that on the night of Sept. 4, 1865, the plaintiff and another person, both of whom were unknown to the defendant personally, went to his house, and, applying for a lodging for the night, were taken in and provided for. Nothing was said about the note until morning, when the plaintiff produced it, and asked the defendant for payment; to which the defendant answered, that he had not the money to pay it. The plaintiff then said he would credit it on the note. The defendant swears that he did not consent to the plaintiff paying his bill in that way; and, in fact, no indorsement of the payment was at the time, or ever, made upon the note.

The Court rendered a decree of foreclosure, and the defendant appeals.

*A. J. Poppleton,* for the appellant.

The only question before the Court is, whether, under the law in force in this State, the mortgage in question was barred by the same lapse of time as the note, — to wit, five years, — or whether a longer time is required to effect that result. It is accordingly respectfully submitted that said mortgage was barred by the express terms of the statute. Revised Statutes, page 295, sects. 7, 10, 16; page 297, sect. 85.

The entire current of decisions which hold that the note may be barred, and the mortgage made to secure the same still survive, are based upon the idea, that the one being a simple contract, and the other a specialty, they are amenable to different statutes, and are each controlled by statutes applicable by their express terms to the respective instruments. *Belknap* v. *Gleason,* 11 *Conn.,* 160; *Thayer* v. *Munn,* 19 *Pickering,* 535; *Craig* v. *Payne,* 4 *Cushing,* 486; *Joy* v. *Adams,* 26 *Maine,* 330.

KYGER *v.* RYLEY.

All distinctions between said contracts being unknown to our law, the reasoning in those cases has no application. The better rule is clearly that laid down in the following cases; viz., that when the note, the principal debt, is barred, the mortgage collateral thereto is also barred. *Jackson* v. *Sackett*, 7 *Wend.*, 94; *Mills* v. ——, 28 *Illinois.*

The policy of the statute would be wholly thwarted and subverted upon any other construction than that the mortgage falls with the note.

*G. W. Doane*, for the appellee.

MASON, Ch. J.

The first question presented to us is, whether a payment was made by the defendant upon these securities which will take the case out of the Statute of Limitations. The circumstances are not very creditable to the plaintiff. He sought and obtained the night's lodging with the view of overreaching the defendant, and, without his consent, gaining an advantage; and, when he disclosed the object of his visit, the defendant did not consent to his paying for his lodging by a credit on the debt. The case wants the very first element of a valid payment to take the case out of the statute, which is an intelligent, or at least conscious, consent on the defendant's part, that what was due to him should be applied on his debt.

The next, and a very important, question is, Was the mortgage barred when the statute ran against the note? In all proceedings to foreclose mortgages in this State, the decree is, that the mortgage be foreclosed, and the mortgaged premises be sold to pay the amount due upon the mortgage debt. A strict foreclosure is

KYGER *v.* RYLEY.

unknown in our State. The nature and character of a mortgage, as well as the method of proceeding to foreclose the same, is regulated by statute. A mortgage in this State differs essentially from a mortgage at common law, both in the remedy and the quantity and character of the estate which was vested in the mortgagee.

A mortgage at common law may be defined to be an estate created by a conveyance absolute in its form, but intended to secure the performance of some act, such as the payment of money and the like, by the grantor, to some other person, and to become void if the act is performed agreeably to the terms prescribed at the time of making such conveyance.

The estate becomes effectually vested in the grantee by the mortgage if the grantor or mortgagor fail to perform the condition of the mortgage. *Fray* v. *Cheney*, 14 *Pick.*, 399; *Brigham* v. *Winchester*, 1 *Metcalf*, 390; *Thrall* v. *Trask*, 7 *Wisconsin*, 566.

The possession of the mortgaged premises may be in the grantor or grantee, according to the terms of the deed; though ordinarily it is retained by the grantor. If there is no provision in the deed as to possession, the mortgagee may lawfully enter and hold possession of the premises until condition performed; and, if the mortgagor failed to perform the condition of the mortgage, his estate was, by the common law, wholly defeated and gone. Mortgages had become common in the time of Henry VI. and Edward IV. Mr. Donell ascribes their origin to the Jews: others derive them from estates upon condition at the common law. And at common law, if the payment was not made at the time fixed, the estate, by the breach of the condition, became forfeited; and the mortgagee thereupon held the same as absolute and irredeemable. 1 *Spence, Eq. Jur.*, 602; *Story's Eq. Jur.*, sect. 1004.

### KYGER *v.* RYLEY.

The idea of extending the time, in which the debtor might redeem his estate, beyond that fixed by the contract of the parties, was doubtless borrowed from the Roman law of hypothecation : the estate did not pass out of the debtor until a sale made by authority of the prætor, and might be redeemed at any time before sale actually made by the payment of the money for which it was a security. *Story's Eq. Jur.*, sect. 1005 ; 1 *Spence, Eq. Jur.*, 600 ; *Cooke, Mortgages*, 40.

The right to redeem after condition broken made its way slowly against the notions of the common law ; though a strict forfeiture in case of a mortgage was condemned by the Council of Lateran, A.D. 1178, during the reign of Henry II. It is said, Parliament, in 1391, refused to admit a redemption after forfeiture ; and such estate continued irredeemable during the reign of Edward IV., who died in 1783.

In *Goodall's case*, 39 *and* 40 *Elizabeth*, the Court of King's Bench held that an estate was lost to a mortgagor, he having failed to perform the condition truly and effectually. 5 Rep., 96.

The disposition to save the debtor from loss if he was willing to indemnify his creditor on account of his debt, which had grown up under the influence of the Courts of Chancery, continued to gain strength until the time of James I., when the Court of Equity decreed a redemption after forfeiture ; and finally, in the reign of Charles I., it became settled that the payment, or tender, after the day, should have the same effect in saving the estate of the mortgagor from forfeiture as if done before the day of payment. A case of this kind is decided in 1 Rep. in Chancery, 32, *Howe* v. *Virgores*. The right to redeem mortgaged premises after they had, in the view of the common law, been forfeited by a failure to perform the condition of the mortgage, gave

to mortgages a double aspect and a double nature, — the one created by and known to the common law, and the other created by and known only to a court of equity ; the right of redeeming after breach of condition being what is called in equity the right of redemption, or, in other words, an equity of redemption.

This may reconcile some seeming discrepancies which occur in defining the right of the mortgagors and mortgagees. In law, the mortgagee held the freehold, and might bring an action of ejectment, and recover the possession of the land mortgaged, against the mortgagor. He might devise his interest by will as real estate, or it would descend by common law to his heir. On the contrary, in equity, the land, or mortgaged estate, is a pledge. The mortgagee holds the mortgaged estate only as a security for a debt; and, like a debt, it was treated only as an interest of a personal nature ; and, if the mortgagee died, the mortgage debt and security went to his executor, who might receive the same, and compel the heir to release to the mortgagor without being paid a cent. *Williams on Real Property*, 353, 354. The legislature of this State have, by enactment, declared that mortgages in this State shall be viewed only in the aspect created by and known to equity, simply as a pledge or security of a debt. The true question to be determined is, Is there a debt subsisting between the parties capable of being enforced in any way *in rem* or *personam ?* For it would seem clear that the want of liability of the grantor to pay the debt secured by the mortgage would necessarily release all right of recovery or liability upon the mortgage. The debt secured by the mortgage is the principal thing : the mortgage is simply an incident to the principal thing. The right to recover on the principal thing having ceased to exist,

Kyger *v.* Ryley.

and being determined by statute, the right of action upon all the incidents must be deemed also to have ceased. No recovery can be had upon the collateral security against the principal debtor when the debt for which such security was given has ceased to exist from any cause whatever. So, in the present case, the debt, which is the principal thing, being barred by the Statute of Limitations, and the mortgage on the land being held as a mere pledge to secure the debt, and held only as security for it, the right of recovery upon the mortgage was gone when liability upon the principal debt ceased. The authorities which held the other way came from those States where the common law is in practical force in respect to the nature and character of mortgages, where the mortgage is treated as conveying the fee to the land, and vesting the same in the mortgagee. Revised Statutes, page 100, sect. 207, says, " When any mortgagee of real estate, or any assignee of such mortgage, shall die, without having foreclosed the right of redemption, all the interest in the mortgaged premises conveyed by such mortgage, and the debt secured thereby, shall be considered as personal assets in the hands of the executor or administrator; and he may foreclose the same, and have any other remedy for the collection of such debt which the deceased would have had if living, or may continue any proceeding commenced by the deceased for that purpose." It will be seen, from the foregoing section, that the interest of the mortgagee in the estate mortgaged, as well as the mortgage debt, is located as assets in the hands of the personal representative of the mortgagee in case of his death. Sect. 288 provides, in case of the redemption of any such mortgage, or sale of the mortgaged premises by virtue of a power of sale contained therein, or otherwise, the money paid thereon

KYGER *v.* RYLEY.

shall be received by the executor or administrator, and he shall thereupon give all necessary releases and receipts; and if, upon sale of the mortgaged premises, the same shall be bid in by the executor or administrator for such debt, he shall be seized of the same for the same persons, whether creditors or next of kin or others, who would have been entitled to the money if the premises had been redeemed, or purchased at such sale by some other person. It appears, from the foregoing sections of the statute, that it was the intention of the legislature to adopt the same view as taken by the courts of equity in respect to mortgages; and it has gone to the full length, treating the estate or pledge vested in the mortgagee as personal assets, and in no case subject to descent to the heir as an interest in real property. See also sects. 31–34, chap. xliii., title Real Estate, pages 286, 287, Revised Statutes, which fully corroborate this view of the nature and character of a mortgage under our statutes. Title 27, Revised Statutes, page 542, Foreclosure of Mortgage, requires that all proceedings for the foreclosure or satisfaction of mortgages shall be in the District Court in Chancery in the county where the mortgaged premises are situate; and requires the petitioner to state whether any proceedings have been had at law for the recovery of the debt secured thereby, or any part thereof has been collected or paid. A common-law foreclosure of a mortgage is unknown to our statutes, and a mortgage is quite a different thing from what it was at common law. Our statute treats it as assets in the hands of the administrator, or personal representatives of the mortgagee. A mortgage in this State is a mere pledge, or collateral security, for the payment of money, or the doing of some other thing. At common law, a mortgage was a conveyance with a defeasance, and gave the mortgagee a right of posses-

KYGER v. RYLEY.

sion.   He might peaceably enter into possession of the mortgaged premises before condition broken, or have ejectment.   The mortgagor at common law conveyed the legal title to the mortgagee; and, upon condition broken, his legal right to the mortgaged premises became absolute.   If the money due upon the mortgage was paid at the time appointed, the estate, or the mortgaged premises, reverted to the mortgagor : if not so paid, the estate of the mortgagor was gone forever. This was the common law relating to mortgages prior to the Council of Lateran, in 1187.   In our State the mortgagor has the right of possession of the mortgaged premises before and after the money is due upon the mortgage, and after decree of foreclosure and sale, and up to the confirmation of the sale by the Court.   The remedy of the mortgagee is confined to an action for the sale of the pledged or mortgaged premises to pay the debt secured by the mortgage, or to an ordinary suit at law to recover the debt itself.   The mortgage is a mere pledge, or collateral security, creating a lien upon the mortgaged property, by conveying no title or vesting no estate either before or after condition broken. The mortgage gives no right of possession, and does not limit the mortgagee's right to control the mortgaged property in any manner he may choose, so that the security remains unimpaired.   He may sell the mortgaged property, and the title will pass by his conveyance.   The Statute of Limitations was made to apply to the substance of the action, and not the mere form. The substance of the mortgage is the debt secured thereby.   The debt being barred by the Statute of Limitations, no recovery can be had thereon, and no remedy upon the mortgage exists.   The judgment of the Court below is reversed, and cause remanded.

Judgment reversed.