## GIBBS v. GIBBS.

1. EVIDENCE—DEPOSITIONS.
Depositions, to be admissible in evidence, must be taken in strict compliance with the statute.

2. SET-OFF.
A defendant cannot buy claims after the commencement of an action against him and set them up as defenses in the suit.   To render such claims available, the title must have vested in the defendant before the institution of the suit.   An agreement to purchase before that time is not sufficient.

3. LIMITATIONS.
Assuming that a payment on the note in controversy suspended the running of the statute of limitations, it commences to run from the time the payment was actually made, and not from the date of its indorsement on the note.

4. EVIDENCE.
Where a party has verified an amended complaint, showing a title totally different in its origin from the one originally averred, he may be inquired of respecting the circumstances of the verification and the consideration which led him to make it.

*Appeal from the District Court of Rio Grande County.*

Mr. E. F. RICHARDSON, for appellant.

Mr. IRA J. BLOOMFIELD, for appellee.

BISSELL, J., delivered the opinion of the court.

Dennis Gibbs sued Maria Gibbs on a promissory note for $500, dated in July, 1892, and payable to Andrew Gibbs. He alleged a transfer to Wilber Gibbs and an indorsement to himself. The labor of stating the whole case may be avoided and yet enough remain to make the decision plain. To this very simple cause of action the defendant pleaded many and divers defenses. She denied the transfer for a valuable consideration to Wilber or the assignment by him to the plaintiff, and averred the title still to be in Andrew. There was then set out in this plea two other notes said to have been given by Andrew and purchased by the defendant, and on this title to the latter paper she pleaded a set-off. In addition to her various defenses she filed a cross complaint wherein she set up the execution by Dennis Gibbs of a promissory note in 1882 for $789.50, with the usual allegations of nonpayment. In a like manner she pleaded by way of cross action, sundry other promissory notes and interest coupons. The pleading contained eighteen different cross actions. It will be observed these several notes were dated in 1882 and had matured many years prior to the bringing of the present suit. The plaintiff. replied and pleaded the statute of limitations. The bar appeared on the face of the complaint, but there was an averment of a part payment on the 5th of November, 1887. The evidence tended to show negotiations between the defendant and M. H. Cheney looking to the purchase of the two notes, which were pleaded as a set-off. Cheney was the agent of the owner of the notes, but whether he had power to sell and convey, or make terms, is not satisfactorily settled. At all events, the negotiations culminated in an offer to purchase the notes for a given sum. Cheney stated they could be purchased for this amount, and promised to communicate with the owner in the East and procure the notes. They were to be paid for when delivered. The arrangement was to put the notes into the bank where the purchaser could get them on the payment of the money. There was no definite or

specific agreement for the transfer of the title at the time of the negotiations in August, nor was any contract or writing entered into between the parties whereby it can be legally said the title passed as a result of the deal. With reference to the cross complaints this only need be said ; the notes were barred by the statute of limitations, and there was nothing to remove the bar, unless the indorsements of payment on the back of the several notes operated as a new promise under the well recognized rule.

The circumstances of these indorsements and what are claimed to be payments are somewhat peculiar. George Gibbs, the husband of Maria, the defendant, had been engaged in mercantile business in the San Luis Valley. He became embarrassed and turned the goods over to Dennis to close the business out and settle with the banking concern to which George was indebted. We need not go any farther into the details of this transaction. To arrange the affairs in a businesslike way and possibly for George's protection, Dennis executed to George divers promissory notes in the total amount of the supposed value of the goods. The goods were to be sold and the proceeds turned over to the bank. Dennis, who had become a debtor to the bank in some way in this transaction, was to have a credit when the goods were sold. It need not be determined whether as between Dennis and George there was an actual purchase and sale and therefore a liability on this paper, for the whole matter turns on a different consideration. The stock was sold during the years 1883 and 1884, and the money turned over to the bank. Dennis got a credit in the bank for the amount which the goods brought, which was in the neighborhood of a couple of thousand dollars. George seems to have had some difficulty in ascertaining what was realized from the sale and the date of the credit. At all events he did not learn till 1887 what credit the bankers had given Dennis. Accordingly in November, 1887, he computed the proportion which the total credit bore to each individual piece of paper, and indorsed on each note the proportionate sum which was the credit each

note was entitled to.   This indorsement under these circum-
stances he claims constitutes a payment which removes the
bar and makes a new promise on which the action will lie.

While the suit was pending the plaintiff sued out a *dedi-
mus* to take the depositions of divers witnesses in Wyoming.
The writ was irregular, but under it the testimony of the
witnesses was taken and the depositions returned.   No cross
interrogatories were filed.   It is conceded the notice was
regular and in apt time, and but for a mistake of the clerk
in the designation of the person to whom the authority ran
to take the testimony, the depositions would have been use-
ful as evidence.   On their return the defendant filed a motion
to suppress for this irregularity.   The motion was sustained.
The court however made a somewhat extraordinary order :
" that the plaintiff be and is hereby permitted to withdraw
the depositions etc. to which objections have been filed, and
that the clerk may issue a new commission correcting the
technical omission in the former commission, it not designat-
ing the person named by any official title."   Whereupon the
plaintiff sued out another *dedimus* without notice and pro-
ceeded to retake the depositions.   Whether the old deposi-
tions were simply reformed does not appear.   When they
were refiled, a motion was made to suppress and the question
was preserved by apt objections.   These were overruled and
the depositions were received in evidence.   They contained
important testimony and may have had great bearing upon
the decision of the suit.   Judgment was entered for the plain-
tiff and the defendant has appealed.

But for the error committed by the court in permitting the
depositions to be used, the judgment would be affirmed.   We
have been referred to no statute and have discovered none
which authorized the court to permit a party to take deposi-
tions without a strict compliance with the statute.   There is
no known way by which depositions of witnesses living out
of the state can be taken, except on due observance of the
statutory course.   Any deviation from the provisions of the
chapter on this subject has in this state been held fatal, and

the use of depositions erroneously taken to constitute an error for which a cause must be reversed.   *Argentine Falls Silver Mining Co. v. Molson*, 12 Colo. 405.

A Texas case was cited which seems to recognize the practice as entirely regular.   We are unadvised as to what the Texas statute may be, but in any event it cannot control the construction of our own act on this subject.   Without some statutory authority the court is powerless to abridge the time of the notice which must be given to the opposite party or the service of the interrogatories which are conditions precedent to the exercise of the right to take foreign depositions. The defendant was under no obligations to ask for time to file cross interrogatories but might rely on the failure of the plaintiff to pursue the required statutory course.   The depositions were not properly received and were inadmissible on the trial.

As this case must go back for another trial, we are under some obligation to dispose of two questions which have been discussed by counsel and which are legitimately presented by the record.   To relieve the parties of the expense and trouble· of a retrial of issues which are in no way sustained by the testimony and which must be eliminated from the consideration of the jury, unless the case is varied by subsequent proof, we will dispose of them.   It is exceedingly clear to us that the right of set-off did not inure to the defendant as to the two notes which were purchased of Stilman through his agent Cheney.   Appellant's counsel properly conceded the lack of right on the part of the defendant to buy claims after the commencement of the action and set them up as defenses in the suit.   A set-off cannot be thus acquired.   The only question then is, when was the defendant's purchase made and what are her rights thereunder.   It cannot be successfully maintained under the testimony as it now stands that the transaction between George and Cheney amounted to a purchase whereby the title to the two notes vested in the defendant and gave her the right to set them off against the plaintiff's claim.   To render these notes available the title

must have vested before the institution of the suit. The proof showed an agreement to pay the money and receive the notes. The two acts were to be concurrent and there was no arrangement for the transfer of the title until the money should be paid. Under these circumstances there was no right of set-off as to the two notes procured from Stilman.

There is a like trouble with the several cross complaints. Undoubtedly the notes and coupons were all barred unless the indorsement stopped the running of the statute. The circumstances surrounding the indorsement and which in reality constituted the payment remove all possible question concerning this matter. The notes were given in 1883. The indorsement was the result of an application by George of sundry credits which the Bank gave to Dennis, on an obligation which Dennis jointly with George apparently owed the bank. Whatever may have been the agreement between Dennis and George respecting the notes which George held, and respecting their satisfaction in whole or *pro tanto* from the proceeds of the sale of the goods, it was undoubtedly agreed between them that the money was to be turned over to the bank and applied in satisfaction of the bank's claim. Since this was true, the money which Dennis paid into the bank, even though as between Dennis and George the amount of it ought to be treated as a payment on the notes, the payment, if any, was made at the time the funds were turned over, which was some time in 1884. Lack of information as to the time or the amount of those credits did not preserve his right to make an indorsement as of the date when he acquired the information and not as of the date when in fact the payment was made. Under these circumstances George's indorsement on November 5, 1887, did not operate to revive the promise, nor was the statute thereby stopped and a right of action preserved. It is exceedingly doubtful whether the transaction would amount to a payment by Dennis with a right of application by his creditor. This position need

neither be analyzed nor justified, for the matters first referred to wholly dispose of the contention.

The appellant complains of the examination of the plaintiff respecting a conversation had between him and his counsel at the time of his verification of the second complaint. With respect to the allegation of a transfer to Wilber and an indorsement to himself, this varied from the allegations in the original pleading. Whether the case would be reversed for this error we need not determine. Undoubtedly the plaintiff could be inquired of respecting the circumstances of the verification, and the considerations which led him to verify a complaint showing a title totally different in its origin from the one originally averred.. He could give his explanation, state his reasons, and it would be left for the jury to determine their value and their force. It was not proper for counsel to interrogate him specifically as to the conversation between counsel and client on the subject. Doubtless the subject-matter was proper enough, but the form of the inquiry was open to criticism.

The record presents no other matters which need be adverted to, and for the error committed by the court with respect to the depositions the judgment must be reversed and the case remanded for a new trial.

*Reversed.*