## Samuel v. Samuel's Admr.

(Decided December 17, 1912.)

### Appeal from Mercer Circuit Court.

1. Limitation—Application of Payments—Right of Creditor.— Where a creditor holds several notes against a debtor and the debtor makes a general payment on the notes without directing its application to any of them, the creditor may apply it to any of the notes that are not barred by limitation, or distribute it as a credit on all of them, if none of them are barred, and thereby cut off the antecedent time on all of the notes to which the payment was applied as a credit.

2. Limitation—Mutual Accounts—Rights of Creditor to Make Application of.—When the creditor owes a claim or demand to the debtor he cannot, without the consent or direction of the debtor, apply what he owes as a credit on the note or demand he holds against the debtor, and if he makes the application without the direction or consent of the debtor it will not interrupt the running of the statute of limitation. The debtor has the right to control the disposition that shall be made of his debt and to apply it as he pleases, and this privilege cannot be taken out of his hands by the mere act of another person.

3. Payment—Application of Payment to Barred Note.—Where a debtor owes a creditor several notes and he makes a payment without directing its application to either of the notes, the creditor may apply it to whichever one he pleases, except that he may not apply it as a part payment of, or as a credit on a note that is barred by limitation. The presumption will be, if no direction is given by the debtor, that he intended the payment to be applied as a credit on subsisting, enforceable debts against him.

4. Payment—Right of Debtor to Direct Application of.—The debtor has the exclusive right, in making a payment, to direct the particular debt. he desires it applied to, and this direction the creditor must observe.

E. H. GAITHER for appellant.

J. F. VANARSDALL for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In July, 1911, H. E. Samuel died, and the following November a suit was filed in the Mercer Circuit Court for a settlement of his estate. In this suit the appellant filed six claims against his estate, amounting in the aggregate to $3,700. One of these claims was an open account for services rendered to him as clerk. The others were five notes: One for $1,419.68, dated February 6,

1894, and due one day after date; one for $200, dated May 3, 1895, due one day after date; one for $400, dated June 19, 1897, due one day after date; one for $200, dated March 30, 1897, due one day after date, and one for $892.21, dated Feb. 1, 1905, due one day after date. The notes for $1,419.68 and $200 were contested by the administrator upon the ground that they were barred by the fifteen year statute of limitation. From the judgment of the lower court sustaining this defense this appeal is prosecuted.

As more than fifteen years had elapsed between the maturity of the notes and the death of H. E. Samuel, the statute presented a complete bar, unless, as contended by counsel for appellant, the life of these two notes was extended by payments, which it is claimed appellant had the right to credit them by, before the expiration of fifteen years from their maturity. No credit is endorsed on either of the notes, but it is insisted, on behalf of appellant, that the amount of a store account, and a board bill due by appellant to H. E. Samuel, should have been credited on these notes, and that it was agreed this should be done.

The evidence in the case consists of checks and other written exhibits, an agreed statement of fact, and the deposition of Miss Mary Bright. The appellant also gave her deposition, but objection was properly sustained to so much of it as related to conversations or transactions had with the deceased, and the remainder of it throws no light on the controversy.

It appears that in 1898 the deceased began business in Harrodsburg as a druggist, at which time the appellant, who was his daughter-in-law, came to live with him, and so continued until his death. During this time, and beginning in January, 1898, the appellant opened an account at the drug store of H. E. Samuel, and this account continued to February 1, 1905, when it amounted, including $50 for Miss Bright's board, to $496.52. On this date it appears that the account of $496.52 was deducted from a note for $1,388.70, due to Mrs. Samuel and a new note executed for $892.21, this new note being one of the five heretofore mentioned. On March 4, 1905, a new account was opened, and this account, which was made up of various articles of merchandise, and included a charge of $100 for Miss Bright's board from March 20, 1905, to January 28, 1906, continued until June 27, 1911, when it amounted to $314.91.

Passing for the present the evidence of Miss Bright, it appears from the exhibits and agreed state of facts that appellant opened an account at the store of H. E. Samuel in January, 1898, and that this account continued to run until February 1, 1905, at which time it was settled in the manner before stated, and in March, 1905, a new account was opened by appellant, which continued to run until June 27, 1911, at which time it amounted to $314.91. From this statement it will be seen that virtually all the time from January, 1898, to June, 1911, appellant owed H. E. Samuel a store account, which included the board of Miss Bright, and that H. E. Samuel owed appellants during all this time the two notes in controversy in this case, dated 1894 and 1895, as well as the two notes dated in 1897, and, for about six years of this time, the note dated in 1905. No credit is indorsed on either of these notes, but it is the contention of appellant in her pleadings that it was agreed that the store account due by her and the board of Miss Bright should be credited on these notes at stated intervals; for example, in July and January of each year.

If this was done, of course the barred notes would be taken out of the statute. There is, however, no evidence tending to support this averment of the pleading except the testimony of Miss Bright, whose board from November, 1904, to January, 1906, was due to H. E. Samuel, and Miss Bright's testimony, so far as pertinent, is as follows:

"Q. When you came to live with her were there any, arrangements made about your board? A. Yes, sir. Q. Who paid that board? A. Mr. Henry Bright, of Danville. Q. To whom was it paid? A. It was to go on Mrs. Samuel's notes. Q. What amount was paid? A. $10 a month for fourteen months; $140. Q. When these arrangements were made for board how did you know anything about it? A. My uncle told me so. Q. Were you present when the arrangements were made? A. Yes, sir; I was in the store. Q. When the checks would come in would they be payable to Mrs. Samuel? A. Yes; and she would take them to the store and show them to him every month. Q. You heard Mr. Samuel tell her to let the board money go on the notes? A. Yes, sir. Q. And that is all you know about that? A. Yes, sir. Q. Did you know anything about these notes except what she said? A. I

knew he owed her money. Q. She told you that? A. Yes.''

It appears from this evidence that the board Miss Bright paid was to go as a credit on the notes appellant held against H. E. Samuel, but she does not say on which of the five notes appellant at that time held it was to go as a credit. She only knew that she heard H. E. Samuel tell appellant to "let the board money go on the notes.'' She did not know anything about the notes except what appellant told her, and it does not appear that appellant told her what notes she held or anything about them except that H. E. Samuel owed her money.

That the parties did not understand that Miss Bright's board was to be put as a credit on the notes executed in 1894 and 1895, or on any particular note, is shown by the fact that a part of her board was included in the settlement made on February 1, 1905, and went to reduce a note for $1,388.70 to $892.21. But treating this circumstance as of no importance in adjudging the case, the evidence of Miss Bright is not sufficient to save the notes in controversy from the statutory bar.

At the time Miss Bright's board was paid no one of the notes was barred by limitation, and it may be conceded that under the general direction given by H. E. Samuel as to the manner in which he wanted Miss Bright's board applied, the appellant had the right, at the time, or in a reasonable time thereafter, to apply the amount of the board as a credit on any of the notes, or to distribute it as a credit on all of them, and that if she had then made this application it would have cut off the antecedent time on all of the notes to which the payment was applied as a credit. Brown v. Osborne, 136 Ky., 456.

But appellant did not at the time the board was paid, or at any time during the five years that H. E. Samuel lived thereafter, apply the board money as a credit on any of the notes; nor is there any evidence to show why she did not do this or to excuse or explain her failure to make the application when the board was paid or within a reasonable time. This being true the case must be considered as if no special direction was given by H. E. Samuel as to the application of the board money, and so we will treat the board money merely as a part of the account that appellant owed H. E. Samuel and deal with it as a part of that account.

Indeed appellant in her pleading does not rely on any special direction as to the application of the board money, but treats it as a part of her general account. Looking at the matter from this standpoint the question for decision is, did appellant, after the two notes in controversy were barred by limitation, or before that time, or at any time, have the right without the consent or direction of H. E. Samuel to apply the amount she owed him on account, as a credit on these notes as of the date when the account became due—say at the end of each six months beginning in 1905, and by applying the store account as a credit on the notes in 1905, 1906, 1907, 1908, 1909 and 1910, save them from their being barred by the statute? We think not.

When the creditor owes a claim or demand to the debtor, he cannot, without the consent or direction of the debtor apply what he owes as a credit on the note or demand he holds against the debtor, and if he makes the application without the direction or consent of the debtor it will not interrupt the running of the statute of limitation. The reason for this rule is that the debtor, who is, to the extent of his demand, a creditor, has the right to direct and control the disposition that shall be made of his debt, and to apply or not apply as he pleases to the payment of demands that he owes, and this privilege cannot be taken out of his hands by the mere act of another person.

As said in Brown v. Osborn, 136 Ky., 436: "The mere putting of a credit on an open account or note, unless there is evidence showing that the amount represented by the credit was paid by the debtor on the note or account, will not be sufficient in itself to stop the statute from running. Hopkins v. Stout, 6 Bush, 375; Frazier v. Frazier, 13 Bush, 397. If the mere entry of a payment as a credit upon an open account or note would of itself have this effect, it would be an easy matter for the creditor, if he felt so disposed, to evade the plea of limitation and stop the statute from running against any account or note that was barred."

To the same effect are Anderson v. Baxter, 4 Oregon, 105; Nash v. Woodward, 62 S. C., 418; Phillips v. Mahan, 52 Mo., 197; Kyger v. Ryley, 2 Neb., 20. As appellant could not do this before the notes were barred, of course she could not, after some of the notes were barred, apply, as a credit on these notes, the account she owed H. E. Samuel and thereby restore them to life.

If H. E. Samuel during his life, and after some of the notes had been barred, had directed her in a general way to credit his notes by the amount of her account. she could not have applied any part of the account on the barred notes, either in part payment of them or as a payment that would arrest the running of the statute as to the balance of the notes. As she could not have done this if he were living, neither can she do it after his death.

There is some conflict in the cases as to the right of a creditor to apply undirected payments to barred notes, but we think the sound and correct rule is that where a debtor owes a creditor several notes and he makes a payment without directing its application to either of the notes, the creditor may apply it to whichever one he pleases, except that he may not apply it in part payment of or as a credit on a note that is barred by limitation and thereby restore life to the note. It will not be presumed that a debtor, in making a payment to a creditor who holds several notes against him, intended, in making the payment that it should be applied to a non-enforceable note or to impart life into notes that were then dead, nor will the creditor be permitted to so apply the payment, unless with the consent of the debtor. The presumption will be, if no direction is given by the debtor, that he intended the payment to be applied as a credit on subsisting, enforceable debts against him, and so if the creditor holds several subsisting, enforceable notes, none of which are barred by limitation, he will be at liberty to credit each of them by a part of the payment, unless directed otherwise to do by the debtor, and may thus prolong the life of all the notes, but the debtor has the exclusive right, in making a payment, to direct the particular debt he desires it applied to, and this direction the creditor must observe. Anderson v. Nystrom, 103 Minn., 168; 14 A. & E. Cases, 54; Wilder v. McAllister, 91 Mo. Appeals, 446, 178 Mo.. 773; Blake v. Sawyer, 83 Me., 129, 23 A. S. R., 762; Armour Packing Co. v. Vinegar Bend Lumber Co., 149 Ala., 205; 13 A. & E. Cases, 951.

The judgment is affirmed.