[No. 12165. Department Two. February 1, 1915.]

ARTHUR & COMPANY, *Respondent*, v. J. R. BURKE,
*Appellant.*[1]

LIMITATION OF ACTIONS — WHAT LAW GOVERNS — LAW OF FORUM.
Where a creditor elects to sue in this state, where the debtor had
resided ever since the inception of the debt, the statute of limita-
tions of the forum governs.

SAME—DEFENSE. The statute of limitations is not an unconscion-
able defense, but a declaration of legislative policy to be respected
by the courts.

·  LIMITATION OF ACTIONS—TOLLING STATUTE—PARTIAL PAYMENTS—
BURDEN OF PROOF. Credits of partial payments do not toll the stat-
ute of limitations unless a voluntary payment was authorized or
ratified by the debtor; mere indorsement is not competent proof of
the date of payment, and the burden of proof rests upon the party
asserting it.

SAME—TOLLING STATUTE—CREDIT ON NOTES—INTENTION OF DEBTOR
—EVIDENCE—SUFFICIENCY. Indorsements of partial payments upon
notes are not sufficient to toll the statute of limitations where it
appears that the debtor, then owing $600 on account, without regard
to consigned goods, reconsigned the goods held on consignment for
sale on commission with directions to credit his account with the
*proceeds when the goods were sold*, and *two years later*, at the re-
quest of the creditor, executed notes for the $600 representing the
balance due on account, upon which credits were later indorsed for
antecedent sales of the reconsigned goods, the date of which sales
were not shown but which must have been more than six years
prior to the commencement of the action; since all intention of the
debtor to have credits indorsed on the notes was negatived by the
fact that the notes were not made until two years after the arrange-
ment for such credits, and that no reference thereto was made at
the time the notes were given.

SAME—PART PAYMENTS—REVIVAL OF DEBT — EVIDENCE — SUFFICI-
ENCY. A barred debt is not revived by part payment unless the cir-
cumstances show a clear and unequivocal intention on the part of
the obligor to revive the whole debt; and assent to a revival of notes
is not shown by the sale of goods and credit of the proceeds, with-
out notice to the debtor, ten years after the notes were given.

[1]Reported in 145 Pac. 974.

Appeal from a judgment of the superior court for King county, Smith, J., entered March 21, 1914, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Reversed.

*Frank A. Paul* and *Hastings & Stedman*, for appellant.

ELLIS, J.—This action was commenced on March 21, 1912, upon three promissory notes, executed and delivered by the defendant to the plaintiff, dated February 15, 1901, at Portland, Oregon, for $200 each, and payable in two, four and six months, respectively. The plaintiff alleged the payment on March 21, 1906, of $27.21 on each note. The defendant in his answer alleged the execution and delivery of the notes at Spokane, Washington, denied the partial payments, and set up affirmatively the bar of the statute of limitations.

The evidence was conflicting. It is undisputed, however, that, for some time prior to 1899, the defendant was engaged in business at Spokane, Washington, and was selling goods purchased from, and goods consigned on commission by, the plaintiff. In May, 1899, the defendant terminated his business at Spokane, and having a small quantity of shelf goods on hand, reconsigned them to the plaintiff at Portland, Oregon, with instructions to credit the account of Northwest Machinery Company (defendant's trade name) with their proceeds when sold. At that time, the defendant owed the plaintiff a considerable balance on account, and in February, 1901, plaintiff sent him the three notes for execution.

Each party introduced but one witness. Plaintiff's president testified that, at the time of execution of the notes, the sum of $600 represented the balance due on defendant's account, without regard to the reconsigned goods plaintiff still had on hand. Defendant testified that it was his understanding at that time that the notes represented the balance due the plaintiff after crediting the proceeds of all of the reconsigned goods. Plaintiff's witness testified that defendant came to Portland and executed the notes there. De-

fendant testified he was not in Portland at any time between 1899 and 1910, and that the notes were executed at Spokane and mailed by him from there to the plaintiff at Portland.

Plaintiff's president testified credit memoranda were forwarded to defendant by mail at different times after the execution of the notes. Purported copies of such memoranda were introduced. He could only say, however, that he supposed they were mailed in the course of business. One of these was dated March 21, 1906, and amounted to $81.62. The plaintiff indorsed one-third of this credit as a payment on each note on March 21, 1906. This witness testified that the goods making up this credit were probably all sold sometime prior to March 21, 1906. He also testified that there were other credits amounting to $9.42 rendered defendant on account of the remainder of the reconsigned goods, one in 1907 and the last in 1913, and stated that defendant had been advised of this by mail.

Defendant denied ever having received any of the letters or credit memoranda and denied having had any correspondence with plaintiff subsequent to the execution of the notes or that he ever knew of or consented to the credit indorsements on the notes.

The lower court found that the notes were executed and delivered at Portland, Oregon, and that a total credit of $27.21 had been made by plaintiff on each note between February 15, 1901, and March 21, 1906, pursuant to the agreement between the parties at the time of the execution of the notes that the proceeds of the reconsigned goods should be credited on the notes as sales were made; and thereupon entered judgment in favor of plaintiff. The defendant appealed.

The sole question presented by this appeal is whether the application upon the notes by the respondent of the moneys realized on sales of the reconsigned goods, tolled the running of the statute of limitations.

We are convinced that, by a preponderance of the evidence, it was shown that the notes were executed by the appellant at Spokane, Washington. This, however, is immaterial, since the respondent elected to sue in this state where the appellant has resided ever since the inception of the debt. In such a case, it is the statute of limitations of the forum which governs. *Freundt v. Hahn*, 24 Wash. 8, 63 Pac. 1107, 85 Am. St. 939; *Adams v. Kelly*, 2 Wash. Terr. 263, 5 Pac. 601; *Weber v. Yancy*, 7 Wash. 84, 34 Pac. 473.

It is the settled law of the state, in common with many others, that the defense of the statute of limitations is not inately unconscionable but is entitled to the same consideration as any other defense. The statute is a legislative declaration of public policy which the courts can do no less than respect. *Thomas v. Price*, 33 Wash. 459, 74 Pac. 563, 99 Am. St. 961; *Morgan v. Morgan*, 10 Wash. 99, 38 Pac. 1054; *Clementson v. Williams*, 8 Cranch 72; *United States v. Wilder*, 13 Wall. 254.

It is also the settled law of this state, following the trend of authority in others, that in order to toll the statute of limitations, the partial payment must have been a voluntary payment made or authorized or ratified by the party against whom the payment is invoked as tolling the statute. *Perkins v. Jennings*, 27 Wash. 145, 67 Pac. 590; *Stubblefield v. Mc-Auliff*, 20 Wash. 442, 55 Pac. 637; *Bassett v. Thrall*, 21 Wash. 231, 57 Pac. 806; 1 Wood, Limitations (2d ed.), § 97; *Good v. Ehrlich*, 67 Kan. 94, 72 Pac. 545; *Sawyer v. Lufkin*, 58 Me. 429; *Arnold v. Downing*, 11 Barb. 554; *Butler v. Price*, 110 Mass. 97; *Dundee Mortgage & Trust Inv. Co. v. Horner*, 30 Ore. 558, 48 Pac. 175.

A creditor cannot by any act of his own, such as the giving of an unauthorized or surreptitious credit, toll the running of the statute. *Atchison, T. & S. F. R. Co. v. Atchison Grain Co.* (Kan.), 70 Pac. 933; *Pease v. Catlin*, 1 Ill. App. 88; *Samuel v. Samuel's Admr.*, 151 Ky. 235, 151 S. W. 676;

*Chapman v. Hogg*, 135 Mo. App. 654; *Good v. Ehrlich*, *supra*.

When reliance is placed upon a part payment to remove the bar of the statute and the payment is denied, the burden of proving the payment within the statutory period rests upon the party asserting it. *United States Trust Co. v. Stanton*, 27 N. Y. Supp. 614; *Gregory v. Filbeck's Estate*, 20 Colo. App. 131, 77 Pac. 369; *Harding v. Grim*, 25 Ore. 506, 36 Pac. 634; *Scott v. Christenson*, 46 Ore. 417, 80 Pac. 731.

It is the fact of partial payment, and not the formal entry of credit, which tolls the statute. The creditor will not be permitted to defeat the statute by making belated credits. There must be affirmative proof of the time of actual payment. *Terrill v. Deavitt*, 73 Vt. 188, 50 Atl. 801; *Fowles v. Joslyn*, 130 Mich. 272, 89 N. W. 946; *Briscoe v. Huff*, 75 Mo. App. 288; *Freeze v. Lockhard*, 87 Mo. App. 102; *Elsea v. Pryor*, 87 Mo. App. 157; *Davidson v. Delano*, 11 Allen 523; *Gibbs v. Gibbs*, 6 Colo. App. 368, 40 Pac. 781; *Hastie v. Burrage*, 69 Kan. 560, 77 Pac. 268; *United States Trust Co. v. Stanton, supra*.

The indorsement by the holder of a note of a payment thereon is not competent evidence of the true date of payment so as to take it out of the operation of the statute. *Smith v. Wells*, 70 N. H. 49, 46 Atl. 51; *Schlotfeldt v. Bull*, 18 Wash. 64, 50 Pac. 590.

The rationale of these principles is this: the payment must be made under such circumstances as to show an intentional acknowledgment by the debtor of his liability for the whole debt as of the date of payment, from which arises a new implied promise, supported by the original consideration, to pay the residue. *Dundee Mortgage & Trust Inv. Co. v. Horner, supra; Becker v. Oliver*, 111 Fed. 672; *Wolford v. Cook*, 71 Minn. 77, 73 N. W. 706, 70 Am. St. 315; *Campbell v. Baldwin*, 130 Mass. 199; *Leach v. Asher*, 20 Mo. App.

656; *Pease v. Catlin,* and *United States v. Wilder, supra.*

Applying these principles to the case in hand, we are convinced that the action was barred by the statute of limitations. In the first place, the respondent's own evidence wholly failed to show that any of the sales of the reconsigned goods represented by the credit of $81.62, apportioned and indorsed, $27.21 upon each of the notes, on March 21, 1906, were made on that day. On the contrary, the respondent's president admitted that they were probably all made prior to that time. He could not even say that any of these goods were paid for on that day or subsequently. The action having been commenced on the last day of the six-year period after the date of these credits and the actual sales having been made prior to that date, it is clear that these credits, representing antecedent sales, were wholly insufficient to show any actual payment within six years prior to the date of suit.

But there is another reason which goes deeper than this. The reconsignment of the goods was never made with the intention that moneys realized from their sale should be applied upon these notes. The notes were not executed until almost two years later. The appellant's testimony that he understood when the notes were given that he had already received credit for all of the reconsigned goods is undisputed. It is negatively corroborated by the admission of the respondent's president that nothing was said about the goods at that time. Upon these facts, we are clear that payments, no matter when made, from money realized from sales of the goods, were not payments made under such circumstances as to show an intentional acknowledgment by the debtor of his liability for the whole debt as of the date of the sales, from which a new promise could be implied to pay the residue.

Had the reconsignment of the shelf goods been made at the time the notes were given and as a part of the same transaction as collateral to the notes, a different case would be presented. Even in such a case, however, it has been usually held that where part payment of a note is made from money

realized by the sale of collateral, a new promise is not to be implied as of the date of the sale of the collateral nor as of any date later than the transfer of the collateral to the creditor. *Wolford v. Cook, supra; Brown v. Latham,* 58 N. H. 30, 42 Am. Rep. 568; *Jones v. Langhorne* (rehearing), 19 Colo. 206, 34 Pac. 997; *Thomas v. Brewer,* 55 Iowa 227, 7 N. W. 571; *Campbell v. Baldwin* and *Leach v. Asher, supra.*

In *Wolford v. Cook,* 71 Minn. at page 79, 73 N. W. 706, it is said:

"Wolford's right to receive the proceeds of the collateral mortgages, and apply them in part payment of defendant's note, was acquired under and by virtue of the contract made at the time the collaterals were transferred to him. His subsequent exercise of that right was not a voluntary payment made by the defendant from which a promise to pay the residue can be inferred. The defendant had done nothing since he transferred the collaterals to Wolford in March, 1889. The fact that he made no objection when informed by Wolford that he had applied the proceeds of these collaterals on his note could not take the case out of the statute. He had no reason to object, and, if he had done so, it would have been futile. Wolford had merely exercised a contract right which he acquired in 1889. Defendant's passive acquiescence in the exercise of that right constituted neither a voluntary payment as of that date, nor a new promise in writing to pay the balance of the debt. *Harper v. Fairley,* 53 N. Y. 442; *Smith v. Ryan,* 66 N. Y. 352; *Brown v. Latham,* 58 N. H. 30."

In *Brown v. Latham,* 58 N. H. at pages 35, 36, it is said:

"The plaintiff's right, in this case, to receive the proceeds and to apply them in part payment, and his exercise of that right within six years of the date of the writ, were neither a promise made by the defendant within that time to pay the residue of the debt, nor an acknowledgment made by the defendant within that time of his liability and willingness to pay the residue, nor evidence from which it can be inferred that within that time the defendant made, or intended to make, or was understood to make, such promise or acknowl-

edgment. What the defendant did in 1862 was an acknowledgment of a liability and a promise to pay at that time, but it has no tendency to prove that he afterwards made such promise and acknowledgment, or authorized them to be made. The placing of the security in the plaintiff's hands was of no greater force or effect than the giving of the note itself."

The same rule is strongly indorsed in 1 Wood, Limitations (2d ed.), page 282 *et seq.*, as follows:

"Nor does a part payment derived from a collateral security, without the debtor's assent to it *as a payment*, operate to remove the statute bar; and although in some of the cases it is intimated that a sale of collaterals made *within a reasonable* time after they are deposited with the creditor, and the proceeds applied upon the debt, may operate as a part payment at the date of the receipt of such proceeds, yet this doctrine is believed to be fallacious, and rests upon the mistaken notion that the creditor is thereby made an agent of the debtor for the collection or sale of such collaterals, ignoring the circumstance that the creditor cannot be made the agent of the debtor to such an extent as to make an act done by him, operate as a new promise to himself, without which ingredient or element a payment cannot operate to remove the statute bar; and according to the later cases it seems that the question as to whether the creditor exercises diligence or not, in the sale or collection of the collaterals, has no influence upon the question of part payment, as the statute can, in any event, only be suspended by some act of the debtor, or some person authorized by him, from which a new promise may be inferred, and in this view the suspension of the statute could only be claimed from the time when such collaterals were deposited with the creditor."

The grounds of the foregoing authorities seem to us sound, but it is not necessary to adopt them here. We need not go so far. Here, the reconsignment of the shelf goods, for sale and application of the proceeds on the debtor's account, was made nearly two years before the notes were ever thought of, and it would be doing violence to any possible intention of the parties to say that, at the time of the transaction, it was

the intention that the sale of the goods should be applied on the notes so as to constitute an acknowledgment of the whole debt, or a promise to pay the balance of the notes by the debtor. Unless this can be implied from the original reconsignment, it cannot be implied at all, since there is no evidence that there was any agreement touching the goods at the time the notes were given or at any subsequent time.

As to the $9.42 payment resulting from the sales made after March 21, 1906, one of them, indeed, after the commencement of this action, there can be no question that, even had it been indorsed upon the notes, it could not operate as a renewal of the notes already barred. Even assuming that a barred debt may be revived by part payment, the payment must be made under circumstances showing a clear and unequivocal intention on the part of the obligor to revive the whole debt. The naked fact of payment or entry of credit is wholly insufficient. *Kaufman v. Broughton*, 31 Ohio St. 424.

The appellant cannot be held to have assented to what he did not know. The burden was on the respondent to prove that he did assent. There was absolutely no evidence that the appellant had any knowledge that the tag ends of his old stock, represented by this $9.42 had not been disposed of long before. He had turned the goods over to the respondent twelve years before the last sale testified to was made. It would be going farther than any authority which we have been able to find to hold that the appellant assented to a revival, by the sale of the goods, after the notes given ten years before had long been barred.

The case of *Becker v. Oliver, supra*, is instructive as going to every phase of the case here. See, also, *Easter v. Easter*, 44 Kan. 151, 24 Pac. 57.

The judgment is reversed, and the case is remanded for dismissal.

CROW, MAIN, MOUNT, and FULLERTON, JJ., concur.