## SMITH v. SMITH

(No. 1497; September 11, 1928; 270 Pac. 174)
(Rehearing Denied November 21, 1928)

*Corthell, McCollough & Corthell,* for plaintiff in error.

*Sullivan & Garnett,* for defendant in error.

RINER, Justice.

This is an action brought by Nellie M. Smith, plaintiff in error, in the District Court of Albany County, Wyoming, against Julia A. Smith, as Administratrix of the Estate of Dwight P. Smith, deceased, defendant in error, on a promissory note signed by Dwight P. Smith, dated at Laramie, Wyoming, January 17, 1912, payable to the order of plaintiff in error, in the sum of $3,000, due two years after date, with interest at six per cent per annum and collection costs, including attorneys' fees in case payment was not made at maturity. As the parties are aligned here as they were before the trial court, they will be referred to hereinafter as plaintiff and defendant respectively.

Plaintiff's petition, after alleging defendant's qualification as administratrix, pleaded the note, the substance of which has already been given, and set out also that Dwight P. Smith had, in part payment of the alleged indebtedness, paid the plaintiff certain sums of money, as follows:

"1914 (The more particular date being to the plaintiff unknown $100.00; 1917, Aug. 22, $100.00, December 21, $50.00; 1918, Mar. 15, $100.00, August 24, $100.00, December 24, $30.00; 1919, Feb. 5, $100.00, Apr. 7, $25.00; 1922, Dec. 20, $25.00; 1923, Dec. 19, $25.00; 1924, April 12, $25.00; Total payments, $680.00."

The rejection after due presentation of the claim of plaintiff as made to the defendant in her capacity as administratrix of the Dwight P. Smith estate is also pleaded.

Defendant's answer denied the execution and consideration of the above described promissory note, admitted

the payments set out by plaintiff, denied that said payments were given or intended by Dwight P. Smith as payments upon the note, and alleged that the payments were made for the purpose of financially assisting the plaintiff while she was in straightened circumstances. In further answer, defendant pleaded the ten-year statute of limitations, and by way of counter claim, also averred that Dwight P. Smith delivered to plaintiff $1200 in Liberty Bonds of the United States, whereon plaintiff became liable to defendant as for money had and received.

Plaintiff's reply was by general and specific denials of the new matter contained in defendant's answer.

A jury trial having been demanded, the verdict went in favor of the defendant generally, but against her upon her alleged counter-claim. The jury also found specially that the checks offered in evidence in proof of the sundry payments alleged to have been made by Dwight P. Smith to Nellie M. Smith were not given by the former to the latter "with the intention on the part of Dwight P. Smith that the same were to be applied as partial payments upon the promissory note" in suit; that such checks were not applied by plaintiff or her agents at the time of the receipt of the same as partial payments upon said note; that the endorsements on the note were not placed there at the times and in the years they bore date, but at a later date, and that the "payments by Dwight P. Smith to plaintiff of $344.50 on April 27, 1922, and the delivery of the $850 in Liberty Bonds on July 7, 1921" were intended as gifts.

Motions for a directed verdict upon the conclusion of the introduction of evidence in the case, for judgment notwithstanding the verdict, and for a new trial, were all presented by the plaintiff to the trial court and all were overruled. Judgment was duly entered on the jury's verdict, and from that judgment the proceedings now at bar were prosecuted. Before continuing further it may be noted that neither the jury's finding that the $1194.50

in cash and in Liberty Bonds turned over by Dwight P. Smith to plaintiff were gifts from the former to the latter, nor that portion of the judgment which confirmed this finding, have been complained of here by either party.

The evidence bearing upon the controverted issues in the case is not as full as could be wished, and not very satisfactory. But three witnesses testified, one of them by deposition. The principal material facts presented by the record which are, in our judgment, necessary to be considered in disposing of the cause are briefly these: Plaintiff and Dwight P. Smith, defendant's intestate, were brother and sister. The brother had been engaged in business in Laramie, Wyoming, for a number of years preceding his death, the sister, meanwhile, residing in the neighborhood of Tonawanda, in the state of New York, where the father of both had lived. Shortly after the note in suit was given, it was delivered by plaintiff for safe keeping to one George Smith, her cousin, who also resided in New York State, was a graduate physician, and engaged in educational work. The latter, in the course of his deposition, stated that while the note was in the possession of the plaintiff at the time of the death of Dwight P. Smith, it had remained in his (George Smith's) possession for a good many years, and during that time, at the request of plaintiff, as moneys were received by her from her brother, she requested her cousin to make, and he did make, certain endorsements on the note, the amounts and dates of which are shown by said endorsements to be: $100—1917; $50—1918; $100—1919; $100—1921; $50—1923; $50—1924; $25—1925. The first four of these notations, with the exception of the dates, were made in ink; the remaining three, and all the dates, with pencil. George Smith had no independent knowledge of the receipt of these amounts by plaintiff, she being his source of information on the matter. He testified also for the plaintiff, referring to the first endorsement, that:

"Moneys which had been received previous to this date had been considered as payments upon the principal sum, of which the note was less than half. The sums which had been received had been not even nominal interest on the principal sum and Miss Smith and myself considered that we were under no legal or moral obligation to endorse them."

By cancelled checks of Dwight P. Smith exhibited to plaintiff by defendant, and offered in evidence by the former, the various money payments by Dwight P. Smith to plaintiff totalling $680, and extending from August 26, 1919 to April 12, 1924, were established as alleged in her petition.

George Smith, the cousin, was the executor of the estate of one George Martin, his uncle. In that estate plaintiff and Dwight P. Smith, by reason of their relationship, were also interested as legatees, each to the extent of between $3800 and $3900. When the time for distribution of this estate drew near, in the spring of 1921, George wrote to Dwight, suggesting that the latter turn over to plaintiff his share in the Martin estate, the sister being at that time in very straightened circumstances, and having very limited resources. This correspondence, received in evidence without objection, shows that she could not secure board and room without running behind her income and being under the necessity of writing to Dwight for funds every little while; that her sight and her hearing had seriously failed, she being nearly sixty years of age; that she owed the Martin estate $670 for money borrowed in 1915, so that her share of the estate would be about $1200, as she expected to assume an $1800 mortgage for part of her legacy therein. In reply to George Smith's suggestion, Dwight, on June 14, 1921, authorized the former to pay the plaintiff the balance due Dwight from the Martin estate. At that time the executor had already sent Dwight, at his request, $3500 of his share of the estate, so the balance turned over to plaintiff was $344.50, for

which she gave a written receipt to George Smith as executor, under date of April 27, 1922. Under date of July 7, 1921, George Smith gave Dwight P. Smith a receipt for $850 in United States Liberty Bonds, "the same being held in trust for Nellie M. Smith and subject to her direction." There was testimony for the defense by an expert in hand-writing and writing inks that in his opinion the first endorsement on the note "could not have been made during 1917—as late as 1917;" and that the four ink endorsements could not have been made extending over the period of time they purported to extend, and that they were all made approximately one after another. Defendant also produced testimony, by her daughter-in-law, that plaintiff had said to the witness, on January 27, 1926, that "she" (the plaintiff) "had a note" and "that she didn't know if it was in existence then—she hadn't seen it for years."

There was no evidence in the record as to how the indebtedness represented by the note in suit arose; none as to any demands whatsoever made previous to her brother's death by plaintiff upon her brother for the payment of this indebtedness after it fell due; none as to any direction given by the brother to either plaintiff or her cousin, George Smith, to apply on account of this indebtedness or otherwise either the smaller sums shown by the checks aforesaid or the larger sums in cash and Liberty Bonds directed to be turned over to plaintiff by her brother. There is not a scintilla of evidence of any correspondence between the interested parties during all the years after it fell due concerning the indebtedness, although money was undoubtedly sent by the brother to his sister on many occasions, in varying amounts and in different ways, and although she lived all the while in the state of New York and he in Laramie, Wyoming.

The contention of the plaintiff appears to be in substance this: As there is no evidence that the checks of Dwight P. Smith to the order of the plaintiff were ac-

companied by expressions of Smith from which their purpose could be inferred, it will be presumed not only that the payments were to be applied to a debt owed by Smith to plaintiff, but also to the very debt in suit; that as there is no evidence that Dwight P. Smith gave any directions as to the application of the money thus turned over to the plaintiff, the law gave the latter the right to apply it upon the debt here in controversy, and she did so; that the bar of the statute of limitations, by these presumptions of law and by these acts of the plaintiff in so applying the several payments made by Dwight P. Smith, has been prevented from falling. Many cases have been cited, but they do not appear to be closely applicable to the situation disclosed by this record. In a great many of them, the statute of limitations was not involved.

The theory upon which part payment of a debt takes the case out of the statute, is that the party making the payment intended by it to acknowledge and admit the greater debt to be due, from which a promise as of the date of payment to pay the balance of the debt will be implied. In Cowhick v. Shingle, 5 Wyo. 87, 37 Pac. 689, 25 L. R. A. 608, 63 Am. St. Rep. 17, it was said: "There is no distinction in principle between the legal effect of payment made before or after the bar of the statute had attached; in either case the legal effect thereof is to create a new cause of action." See also Bank v. Maika, 16 Wyo. 141, 92 Pac. 619, 125 Am. St. Rep. 1032. Section 5579, W. C. S. 1920, provides, in so far as it is applicable here: "When payment has been made upon any demand, founded upon contract * * * an action may be brought thereon within the time herein limited, after such payment * * *." In the instant case a number of payments in money and valuable securities are established as having been made by her brother Dwight P. Smith to plaintiff. The crucial question of course is, were they paid by the brother "upon any demand founded upon contract" held against him by plaintiff, his sister? It is es-

tablished also in the case, as we have noted, and acquiesced in by the parties to the record, that the two larger payments, the one of $344.50 and the other of $850 in Liberty Bonds, were merely gifts and not payments on any "demand." There is left then to be considered the effect to be given the smaller payments.

In arriving at a solution of this question, it will be of material assistance to briefly review what has been said by persuasive authority concerning the effect, as regards the operation of the statute of limitations, to be given a payment by one person to another who holds a contractual demand against the former. Bearing in mind that the legal result of an intentional part payment by a debtor on an indebtedness against which the bar of the statute is running is to raise a new actionable promise implied therefrom, we find the Federal Supreme Court remarking, in Moore v. Bank of Columbia, 6 Peters 86, 8 L. Ed. 329, concerning a claimed acknowledgment of indebtedness, that:

"If the bar is sought to be removed by the proof of a new promise, that promise, as a new cause of action, ought to be proved in a clear and explicit manner, and be in its terms unequivocal and determinate."

"If there be no express promise, but a promise is to be raised by implication of law from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt, which the party is liable and willing to pay. If there be accompanying circumstances which repeal the presumption of a promise or intention to pay, if the expressions be equivocal, vague and indeterminate, leading to no certain conclusion, but at best to probable inferences, which may affect different minds in different ways, they ought not to go to a jury as evidence of a new promise to revive the cause of action."

This language was employed in reversing the judgment for the plaintiff in a case where it appeared that the defendant, being bantered about his freedom from debt to

the banks, said: "Yes, except one damned $500 at the Bank of Columbia, which I can pay at any time." And there was testimony that but the one note of defendant was held by the plaintiff at that time.

In United States v. Wilder, 80 U. S. 254, 20 L. Ed. 681, the same court, after reviewing two previous decisions, had this to say concerning the matter of part payment invoked to raise the bar of the statute:

"It results from these cases that a promise to pay cannot be inferred from the mere fact of payment of part of a debt, there being nothing to raise a presumption that it was a payment on account of this debt. The principle on which part payment takes a case out of the statute is, that the party paying intended by it to acknowledge and admit the greater debt to be due. If it was not in the mind of the debtor to do this, then the statute, having begun to run, will not be stopped by reason of such payment."

In 17 R. C. L. 923, the law is stated to be that:

"A promise to pay cannot be inferred from the mere fact of payment of part of a debt, there being nothing to raise a presumption that it was a payment on account thereof. The principle on which part payment takes a case out of the statute is that the party paying intended by it to acknowledge and admit the greater debt to be due. If it was not in the mind of the debtor to do this, then the statute, having begun to run, will not be stopped by reason of such payment. Therefore a partial payment, in order to operate as a new promise so as to avoid the bar of the statute, must be made under such circumstances as to warrant the clear inference that the debtor recognizes the debt as an existing liability, and indicates his willingness or at least an obligation to pay the balance."

In Chadwick v. Cornish, Administrator, 26 Minn. 28, 1 N. W. 55, it is said:

"In the case of Brisbin v. Farmer, 16 Minn. 215, this court stated the rule in relation to a part payment of a

debt, preventing the running of the statute of limitations as follows: 'there is no doubt that a part payment, without words or acts to indicate its character, would not be construed as carrying with it an acknowledgement, that more was due and would be paid, i. e., it would not be evidence from which a jury would be warranted in inferring a new promise.' ''

Brock v. Corbin, Administratrix, 94 Kans. 542, 146 Pac. 1150, was a suit on a note apparently outlawed by the statute. Defendant succeeded below, and plaintiff assigned error because of the overruling of a motion for a new trial on the ground mainly of newly discovered evidence. Holding this ruling to be correct, the reviewing court said:

"In an affidavit he alleges that since the trial he has discovered one witness who would testify that in the spring of 1908 he heard Corbin say that he had made a payment to Brock upon the note, and also another witness who would testify that in 1908 Corbin stated that he had paid something on his note to Brock. In the proposed new testimony there is no identification of the note on which the alleged payments were made, nor is the time of the year when they were made stated. To avoid the bar of the statute of limitations it is necessary to show: First, that payments had been made by Corbin on the very note sued on; and, second, that the payments had been made after February 11, 1908. To effectually interrupt the statute by the payments, it is necessary that there be a certainty as to the identification of the debt on which it is made, and, as we have seen, that is lacking in the proposed testimony."

In Lowery v. Gear, 32 Ill. 383, also a suit upon a promissory note, to the plea of statute of limitations, the plaintiff replied a new promise. The jury having found for the defendant, an appeal was taken by the plaintiff, and the following excerpt from the opinion in the case shows the purport of the decision:

"The plaintiff relied upon an implied new promise arising upon the fact of a payment made by the defendant upon the note within sixteen years. If the proof shows that, in fact, such a payment was made upon the note, then the law implies therefrom a new promise to pay the note. Two indorsements of payments appear upon the note, one of thirty dollars, and one of fifteen dollars. Both these indorsements were made by Brown, the payee and holder of the note, when the maker was not present; consequently, they, of themselves, cannot impose upon the maker the obligation of a new promise. Brown could not by his own act make a promise in his own favor which would bind Gear. We must look to the evidence, then, independently of these indorsements, and see whether Gear did, in fact, make these payments with the design that they should be in part satisfaction of this note. * * * It must be remembered that this new promise can only be implied where the party designedly makes a payment upon the note. There must be an actual, affirmative intention to make a payment on the note, before we can infer the promise. It is a general rule, no doubt, that where a debtor makes a payment without designating to which of several claims it shall apply, the creditor may apply it to which he pleases; but this could not authorize Brown to so apply it as to bind Gear by an implied new promise, without the actual intention of Gear to make such a promise. This was a matter of which Gear must have had an affirmative intention, before he could be bound. His volition was indispensable in order to bind him. If he had no thought or intention one way or the other, even then he could not be held to have made a new promise, for, to do that, he must have had an affirmative intention. This whole question was fairly submitted to the jury, and they found the issue in favor of the defendant, and we do not think that finding should be disturbed."

Another case where the statute of limitations was also involved, and also from the court last above cited, is Miller v. Cinnamon, 168 Ill. 447, 48 N. E. 45, where the opinion reads in part:

"Appellant furnished the appellee, from time to time, while she lived with him, with clothing, shoes, stockings,

hats, and other supplies or necessaries, and paid dentists' and doctors' bills contracted by her, and permitted her to obtain such supplies from a store in the village near his farm, and charge the same to him. The articles thus charged to him he paid for. It is claimed on behalf of the appellee that the furnishing of these articles of clothing and other supplies,- and the furnishing of the money to buy them from time to time, were payments on the amount due for services, which operated to take the case out of the bar of the statute. Wherever such payments so operate to take the case out of the bar of the statute, it is upon the ground that they amount to admissions that the debt is due. A new promise will not be inferred from a payment, unless there is an actual affirmative intention on the part of the debtor to make a payment upon the debt claimed to be due. There must be an intention on the part of the debtor to waive the bar of the statute. Lowery v. Gear, 32 Ill. 383; Kallenbach v. Dickinson, 100 Ill. 427. It should have been left to the jury to say whether or not any payments were made with such intention as would constitute, or amount to, a new promise. Mellick v. DeSeelhorst, 1 Breese, 221; Ennis v. Palace Car Co., supra. (165 Ill. 161, 46 N. E. 439.) There was some evidence tending to show that appellant furnished the appellee with clothing, and money to purchase clothing, within five years before the beginning of the present suit, but there is nothing in the evidence to show that such payments were intended to apply upon such of the claimed indebtedness as accrued before the beginning of the period of five years before the commencement of this suit.''

Burr v. Burr, 26 Pa. St. 284, was a suit by a mother against the administratrix of her deceased son, upon a note signed by the latter to her order. There was a plea of the statute of limitations, sought to be avoided by proof of part payment. The only testimony on the point was that of the plaintiff's daughter, who stated: ''Mother says, 'Israel, can thee let me have a little interest money on that note which I hold of thine?' He said, 'How much would thee like, Mother?' She said, 'Four or five dollars,' and he gave her seven. He said, 'Is that sufficient?' She

said, 'It is for the present.' '' The judgment given for the plaintiff in the trial court was reversed on error and the following language appears in the opinion:

"There is a statutory bar to the plaintiff's cause of action; to remove this bar, she relies upon a promise to pay within six years before the commencement of the suit. To sustain the promise, she neither gives evidence of an express agreement to pay, nor of a direct acknowledgment that the debt was unpaid; but from a small payment of interest, a constructive acknowledgment is to be inferred, and upon this constructive acknowledgment, the promise to pay is based. Let it be so; but let it first be shown that this payment of interest was made upon the note in suit. This is the very corner-stone of the superstructure, and if it has any inherent weakness, the action cannot be supported by it. And here we are compelled to say that the evidence was too vague and uncertain, to establish a partial payment of the note in question. The note was not present, nor was it referred to by date, amount, or in any manner whatever. 'Can thee let me have a little interest money on that note which I hold of thine?' says the mother. On what note? The one in suit? This is mere conjecture. It is said, that in the absence of evidence that there was any other note given by the son to the mother, the presumption is that this is the one upon which the payment was made. When it is recollected that this suit was commenced after the decease of the maker of the note, against his administratrix, it is apparent that the absence of evidence proving the existence of another note or notes, does not clearly show that none such were in existence two years before the intestate's decease. The burden was upon the plaintiff to prove clearly and distinctly that a partial payment was made upon the note sought to be recovered, within six years from the commencement of the action. Failing in this, the jury should have been directed to find for the defendant."

In Williams, Administrator, v. Lakin, 143 N. Y. S. 1072, the action was by Mary Lakin against Williams, Administrator of the Estate of Esther J. Sutton, upon a balance claimed to be due for labor and services per-

formed for the deceased. The administrator contended that part of the claim was barred by the statute of limitations, to which it was replied that a payment of $50 had been made so as to save the statutory bar. The evidence showed that one Bolton gave the sum of $50 to plaintiff and told her that the intestate wanted him to give it to plaintiff. The latter hesitated about taking the money and Bolton testified that he then said: "You better take it because Aunt Esther wants you to have it." There was nothing then said that the $50 was in payment of any indebtedness and there was nothing then said that the acceptance was in recognition of any indebtedness. Concerning this situation the Appellate Division of the Supreme Court remarked:

"It is settled law that a payment to take a case out of the statute of limitations must be made under such circumstances as to indicate an intention on the part of the person paying the same to recognize the existence of a debt. Crow v. Gleason, 141 N. Y. 493, 36 N. E. 497. There is nothing in the circumstances surrounding the giving of this money to the claimant by Mr. Bolton to indicate in any way a recognition of an indebtedness either by Bolton or by the intestate."

The same court, in Ryan v. McElroy, 44 N. Y. S. 196, had already said:

"The money given to the plaintiff by the deceased, and which was apparently relied upon to take the claim out of the statute of limitations, was not paid under such circumstances as to warrant the inference that it was a payment on account of the plaintiff's services, or an acknowledgement of any debt due from the deceased to the plaintiff. Crow v. Gleason, 141 N. Y. 489, 36 N. E. 497. The plaintiff was acting as a general housekeeper and woman of all work for the deceased, and the moneys given by him to her can be as well inferred to have been given to her to meet the household expenses, as that they were in payment for services rendered. The testimony is very meager and unsatisfactory, and wholly insufficient to base

a finding that they were payments made by the deceased, and received by the plaintiff, in payment or part payment of the services rendered by her.''

The two preceding cases are illustrations of the application of the rules governing part payment when relied upon to relieve a claim from the bar of the statute of limitations, as announced in the leading case from the New York Court of Appeals of Crow v. Gleason, 141 N. Y. 489, 36 N. E. 497. In that case the following language was used:

''In order to make a money payment a part payment, within the statute, the burden is upon the creditor to show that it was a payment of a portion of the admitted debt, and that it was paid to, and accepted by, him as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder. Part payment of a debt is not, of itself, conclusive to take the case out of the statute. In order to have that effect, it must not only appear that the payment was made on account of a debt, but also on account of the debt for which action is brought, and that the payment was made as a part of a larger indebtedness, and under such circumstances as warrant a jury in finding an implied promise to pay the balance. If it be doubtful whether the payment was a part payment of an existing debt, more being admitted to be due, or whether the payment was intended by the party to satisfy the whole of the demand against him, the payment cannot operate as an admission of a debt, so as to extend the period of limitation. If there be a mere naked payment of money without anything to show on what account, or for what reason, the money was paid, the payment will be of no avail under the statute. The payment must be made under such circumstances as to show a recognition of a larger debt remaining unpaid. These rules, in varying phraseology, are laid down and illustrated in many authorities. Abb. Tr. Ev. 824; 1 Wood, Lim. 271 et seq.; Harper v. Fairley, 53 N. Y. 442; Albro v. Figuera, 60 N. Y. 630; Smith v. Ryan, 66 N. Y. 352.''

In Bank v. Maika, supra, this court, quoting from a New Hampshire case (Lang v. Gage, 65 N. H. 173, 18 Atl. 795), said:

"The rule is thus stated: 'Part payment alone is merely an acknowledgment of indebtedness *pro tanto*. \* \* \* The efficiency of a payment to avert the effect of the statute of limitations as a bar rests in the conscious and voluntary act of the debtor explainable only as a recognition and confession of the existing liability. \* \* \* It must appear that the payment was a partial one, and made under such circumstances as to show that the debtor understood that he was liable to pay the residue of the debt, and his willingness to pay it.' "

In view of the principles set forth in these authorities, it would seem that the trial court might well have sustained defendant's motion in this case for a directed verdict made at the close of plaintiff's evidence. However that may be, we are clear that the jury's conclusion upon the entire submitted case was not such as to justify us in interfering with it. The jury's finding as to the intention of Dwight P. Smith in turning over the $344.50 and the $850 in liberty bonds to his sister, as gifts, is now conceded by both parties to this record as correct. Yet so far as act or word coming from the debtor is concerned, which might shed light upon his real intentions in these matters, there is no greater amount of evidence in the record regarding the smaller payments than touching the two greater, now conceded to be gifts. The several smaller payments can hardly be said to have been made under such circumstances as to "warrant the clear inference," or were "explainable only" that Dwight P. Smith recognized this particular debt here in controversy as an existing liability and indicated his willingness or obligation to pay the balance. The relationship of brother and sister, and the moral obligations arising therefrom, the impaired physical condition of the sister, her need of funds and even the bare necessities of life, her borrowing money from an uncle—at a time when she held this claim

against her brother and when it was past due—the existence of another and larger claimed indebtedness against the brother held by her during this time, the absence of any demand of any sort by her as of right upon him, the lack of evidence of correspondence between the parties accompanying the several payments were all matters which, with others which could be mentioned, were necessarily to be weighed by the jury in reaching its verdict. They are such accompanying circumstances as in our judgment could properly be considered by the jury, along with the presumptions upon which plaintiff relied, which are themselves but mere inferences of fact. Peabody etc. Co. v. Industrial Com., 287 Ill. 407, 122 N. E. 843. As this court has said in Lewis v. England, 14 Wyo. 128, 82 Pac. 869, 2 L. R. A. (N. S.) 401:

"While it is true that a negotiable note or order drawn by a debtor and accepted by the creditor is presumed to be an extinguishment of the original debt, this presumption may be rebutted or explained, by agreement of the parties, or by proof of a usage, or of circumstances inconsistent therewith."

We cannot see that the jury stepped without their province or that their conclusion is so manifestly wrong when viewed in the light of the authorities cited, as to require a new trial.

Complaint is made of the failure to give instruction "D" in the record. It is a sufficient answer to this contention to say that the instruction does not accurately reflect the evidence shown by the record. Our attention is called to the fact that some of the smaller payments were endorsed upon the note, but this does not aid in determining what Dwight P. Smith's intentions were in making the payments under consideration. As said by the United States Circuit Court of Appeals for the Third Circuit, in Becker v. Oliver, 111 Fed. 672:

"In the case in hand, however, the whole question is as to the actual intention with which the particular payments are made, because it is only from an actual intention to pay on account of a particular debt that an acknowledgment of an existing indebtedness can be inferred. The application by the plaintiff of the payments to him of certain sums of money to these particular notes can in no wise aid us in ascertaining the real intention of the defendant in making such payments. * * * The act of appropriating the money received from the defendant, and of placing the credits on the notes, was confessedly the act of the plaintiff, and as such could afford no ground for an inference as to the intention or state of mind of the defendant in regard to these notes. To make it relevant, it must have been clearly and unequivocally assented to by the defendant."

The denial of plaintiff's motion for a new trial on the ground of newly discovered evidence is brought before us as alleged error, but this contention must also be resolved against plaintiff by the language of this court in Paseo v. State, 19 Wyo. 344, 117 Pac. 862, where it is said:

"The granting of a new trial on that ground is a matter largely within the discretion of the trial court, and its decision will not be disturbed unless it appears that the court has abused its discretion, or has violated a clear right of the appellant. Nor will a new trial be granted on that ground when the evidence claimed to have been discovered since the trial is merely cumulative, or upon unimportant matters in the case, or is in the nature of impeachment, or where the newly discovered evidence, if produced, would not in the opinion of the court affect the verdict."

Finding no error in the record before us, the judgment of the court below is affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.