[No. 26946. Department Two. May 31, 1938.]

EMMA C. GRISSOM, *as Administratrix, Appellant,* v.
J. ALVA BULL, *as Administrator, et al.,*
*Respondents.*[1]

*Everette R. Small,* for appellant.

*Short & Short* and *Jay A. Whitfield,* for respondents.

ROBINSON, J.—This is an action to foreclose a mortgage.

On October 31, 1914, Mrs. Bertha Hansen, an elderly widow, deeded to her son Gilbert Olaf Hansen, and his then wife, Flora, the Hansen home place, in Kittitas

[1] Reported in 79 P. (2d) 971.

county, containing fifty-five acres. There were two dwelling houses on the place, and she reserved a life interest in the small tract upon which her own house was situated. On the same day, the son and his wife gave her their note for six thousand dollars, payable in ten years, with interest at the rate of five per cent per annum, and secured the note by giving her a mortgage upon the property which she had just deeded to them. The mortgage was duly recorded on November 4, 1914. Gilbert Olaf Hansen, commonly known as Olaf Hansen, was Bertha Hansen's youngest son.

In 1921, Olaf and Flora Hansen were divorced, and a decree was entered awarding the property to Olaf Hansen, subject to the mortgage. Later, Olaf Hansen married Florence Hansen, and they continued to live on the home place.

Bertha Hansen died intestate on January 24, 1933. Olaf Hansen died intestate on February 29, 1936. Mrs. Grissom, daughter of Bertha Hansen and sister of Olaf, was appointed administratrix of her mother's estate on June 3, 1936, and on March 27, 1937, began this action to foreclose the mortgage against the administratrix of the estate of Olaf Hansen, joining his heirs as defendants. The defendants set up the statute of limitations. At the close of the plaintiff's case, the court sustained a motion to dismiss, on the ground that the action was barred by the statute.

The debt secured by the mortgage became due on October 31, 1924. It was not claimed that the obligation was in any way formally renewed. It was not claimed that any payment of principal or interest was made prior to sometime during the summer of 1931. As the bar of the statute attached on October 31, 1930, it was incumbent upon the plaintiff to show that the payment alleged to have been made in the summer of 1931, or some subsequent payment, was made under

such conditions as to show an intentional acknowledgment by Olaf Hansen of his liability for the whole debt as of the date of payment, thus creating a new promise, by implication, to pay the residue. *Eureka Cedar Lumber & Shingle Co. v. Knack,* 95 Wash. 339, 163 Pac. 753.

It was said in *Berteloot v. Remillard,* 130 Wash. 587, 228 Pac. 690, quoting from the syllabus of *Arthur & Co. v. Burke,* 83 Wash. 690, 145 Pac. 974:

"A barred debt is not revived by part payment unless the circumstances show a clear and unequivocal intention on the part of the obligor to revive the whole debt; . . ."

The rule laid down in these cases was cited, approved, and applied in a recent opinion by this court in *Stockdale v. Horlacher,* 189 Wash. 264, 64 P. (2d) 1015.

Emma C. Grissom, the plaintiff, testified as to the first payment alleged to have removed the bar of the statute. The court refused to consider a portion of her evidence, believing it to be offered in violation of Rem. Rev. Stat., § 1211 [P. C. § 7722]. This is alleged as error, and a large portion of the briefs of the parties is given over to the discussion of that matter. We do not find it necessary to determine that controversy, for, if the questioned evidence be considered, it is still not sufficient to remove the bar of the statute.

Giving Mrs. Grissom's testimony its full scope, it amounts to no more than this: In July, 1931, at a family reunion, Merlyn Snyder, daughter of Olaf, gave Mrs. Grissom a twenty-five dollar check for her mother. The check was drawn or endorsed by Olaf Hansen. Mrs. Grissom had her brother Henry cash it (which evidence Henry confirmed) and gave the money to her mother, Bertha Hansen.

Pearl Rutherford, a granddaughter of Mrs. Hansen and daughter of Mrs. Grissom, testified that her grandmother was staying with her in February, 1932, and

that her uncle Olaf came down to see her mother. He gave her a twenty dollar check for her grandmother, which she gave to her mother, Mrs. Grissom. Referring to this check, Mrs. Grissom said she thought it was signed Olaf Hansen, Gilbert O. Hansen, or G. O. Hansen, "I don't just remember; I don't recall to whom it was made payable." She was not permitted to testify that she gave the money to her mother, but, in discussing the matter, we will assume that she did.

This is the substance of all the evidence covering the payments alleged to have been made by Olaf Hansen to his mother. Admitting that he sent her these sums, there is no evidence whatever that they were intended as payments on the obligation secured by the mortgage. They were comparatively trifling in amount, and, for aught that is shown, they may have been gifts from the son to the mother or they may have been payments on some other obligation. There is certainly no showing of an intention to recognize or revive the outlawed debt.

In *Crow v. Gleason*, 141 N. Y. 489, 36 N. E. 497, it is said:

"If there be a mere naked payment of money without anything to show on what account, or for what reason the money was paid, the payment will be of no avail under the statute."

See, also, *Smith v. Smith*, 39 Wyo. 107, 270 Pac. 174.

The deficiency of the evidence in this case is well shown by an old case on the subject, which has been often cited and quoted: *Burr v. Burr*, 26 Pa. 284, decided in 1856. This was a suit by a mother against the administratrix of her deceased son upon a note signed by the latter to her order. There was a plea of the statute of limitations, and it was sought to be avoided by proof of part payment. The only testimony

on the point was that of the plaintiff's daughter, who stated:

"Mother says, 'Israel, can thee let me have a little interest money on that note which I hold of thine?' He said, 'How much would thee like, mother?' She said, ' Four or five dollars,' and he gave her seven. He said, 'Is that sufficient?' She said, 'It is for the present.' "

The judgment given for the plaintiff in the trial court was reversed on appeal, and the following language appears in the opinion:

"There is a statutory bar to the plaintiff's cause of action; to remove this bar, she relies upon a promise to pay within six years before the commencement of the suit. To sustain the promise, she neither gives evidence of an express agreement to pay, nor of a direct acknowledgment that the debt was unpaid; but from a small payment of interest, a constructive acknowledgment is to be inferred, and upon this constructive acknowledgment, the promise to pay is based. Let it be so; but let it first be shown that this payment of interest was made upon the note in suit. This is the very corner-stone of the superstructure, and if it has any inherent weakness, the action cannot be supported by it. And here we are compelled to say, that the evidence was too vague and uncertain, to establish a partial payment of the note in question. The note was not present, nor was it referred to by date, amount, or in any manner whatever. 'Can thee let me have a little interest money on that note which I hold of thine?' says the mother. On what note? The one in suit? This is mere conjecture. It is said, that in the absence of evidence that there was any other note given by the son to the mother, the presumption is that this is the one upon which the payment was made. When it is recollected that this suit was commenced after the decease of the maker of the note, against his administratrix, it is apparent that the absence of evidence proving the existence of another note or notes, does not clearly show that none such were in existence two years before the intestate's decease. The burden was upon the plain-

tiff to prove clearly and distinctly that a partial payment was made upon the note sought to be recovered, within six years from the commencement of the action. Failing in this, the jury should have been directed to find for the defendant. We are of opinion that the plaintiff's evidence was not sufficiently clear and unambiguous to authorize the jury to find that the payment was made upon the note in suit."

And yet in that case there was evidence that a payment was made on demand and upon a note. "Israel, can thee let me have a little interest money on that note which I hold of thine?" In this case, there was evidence merely that two trifling sums were sent by the son to his mother through third parties, and one of them was sent on the occasion of a family reunion.

After the case had been dismissed, the plaintiff moved to reopen the matter, and also for a new trial. In support of both motions, affidavits were made by Ben Thompson and Ella Hansen, a daughter-in-law of Bertha Hansen. Ben Thompson stated in his affidavit that he was acquainted with Olaf Hansen and Bertha Hansen from about the year 1923 or 1924 to the time of their deaths; that he had worked at the Hansen place at intervals during that period, and on many occasions he had heard Bertha Hansen request Olaf Hansen to furnish supplies and groceries, and heard him agree to do so, and that he had seen him bring such supplies; and that on several occasions Olaf Hansen had told him that he was going different places to give his mother some money, and that he did so give her money.

Ella Hansen, in her affidavit, stated that, during the summer of 1930 and prior to October 31st of that year, Bertha Hansen was residing in the home of her husband and herself, and that Bertha Hansen requested her to call G. O. Hansen and request him to come and pay her some money, and that G. O. Hansen did come to their home and pay some money to Bertha Hansen.

There was a further affidavit by the plaintiff's attorney to the effect that, in spite of his diligence in preparing the case and in seeking evidence, he had not discovered, before the trial, the existence of the evidence set out in the two affidavits.

The court refused either to open the case or to grant a new trial, partly on the ground of lack of diligence and partly on the ground that the new evidence could not change the result. The refusal to grant these motions, or one or the other of them, is assigned as error. It is pointed out that the alleged new evidence tends to prove payments made before the bar of the statute attached on October 31, 1930, that is, payments tolling the statute; and it is said that proof of such payments is not required to be as definite and certain as that required to prove payments relied upon to revive an obligation after the bar of the statute has actually run. However that may be, it was still necessary to prove that the payment was made with reference to the obligation in suit. This, the alleged newly discovered evidence did not purport to do.

The situation presented is very similar to that dealt with in *Brock v. Corbin,* 94 Kan. 542, 146 Pac. 1150. The note in that case fell due on April 2, 1907. There was a five year statute. Action was begun on February 11, 1913. It was therefore necessary to prove a payment after February 11, 1908; that is to say, it was a case of proving a payment made before the statute had run. We quote from the opinion, italics ours:

"Plaintiff also complains of the ruling of the court refusing a motion for a new trial which was based mainly on the ground of newly discovered evidence. In an affidavit he alleges that since the trial he has discovered one witness who would testify that in the spring of 1908 he heard Corbin say that he had made a payment to Brock upon the note, and also another witness who would testify that in 1908 Corbin stated

that he had paid something on his note to Brock. *In the proposed new testimony there is no identification of the note on which the alleged payments were made,* nor is the time of the year when they were made stated. To avoid the bar of the statute of limitations it is necessary to show, first, that payments had been made by Corbin on the very note sued on, and, second, that the payments had been made after February 11, 1908. *To effectually interrupt the statute by payments it is necessary that there be a certainty as to the identification of the debt on which it is made,* and, as we have seen, that is lacking in the proposed testimony. Then there is the lack of certainty as to the time of payment. If received and considered the testimony would not affect the decision made by the trial court, and before a new trial is granted upon this ground it must affirmatively appear that the new evidence is not only material, is not cumulative, and that due diligence was used to procure it, but also that if produced on another trial it would be sufficient to change the result."

We find no error in the rulings of the trial court, and the judgment appealed from is affirmed.

STEINERT, C. J., BEALS, MILLARD, and BLAKE, JJ., concur.