## INVESTMENT & SECURITIES CO. v. BUNTEN

(No. 2155; June 18, 1940; 103 Pac. (2d) 414)

78

For the appellant, there was a brief and oral argument by *Richard J. Jackson* of Cheyenne.

For the respondent, there was a brief and oral argument by *Clarence A. Swainson* of Cheyenne.

RINER, Chief Justice.

This cause comes to this court by direct appeal from a judgment of the district court of Laramie County in favor of the Investment and Securities Company, a corporation, as plaintiff below and respondent here, and against J. C. Bunten, as defendant, the party last mentioned as appellant claiming error.

The action was instituted January 13, 1939, upon a promissory note, which reads:

"Spokane, Washington, January 24, 1933          $600.00

Ninety days after date for value received I promise to pay to the order of The Old National Bank & Union Trust Co. Six Hundred Dollars with interest at the rate of 8 per cent per annum from maturity also reasonable attorney's fee in any action brought on this note.

This note is payable at The Old National Bank & Trust Co. Spokane, Washington.

No. 6771                    .(Signed)  J. C. Bunten
Due May 25, 1933                     Cheyenne, Wyoming"

This note carries on its reverse side the following endorsements:

"Pay to order of Bonded Adjustment Company for collection only

Investment and Securities Co.
By E. B. Hutcheck
Vice President
Without Recourse
Bonded Adjustment Company
By W. W. Clarke
Pres.
Without Recourse
Pay to the order of Investment & Securities Co.
Old National Bank & Union Trust Co. of Spokane
By R. W. Jones
Ass't Cashier"

The defense interposed to the action, and with which we are here concerned, was the bar of the statute of limitations, the allegation in that respect being in defendant's pleaded second defense of his answer:

"Defendant further alleges that said alleged indebtedness was contracted in the State of Washington while defendant was a resident of that state; that the said alleged indebtedness was payable in the City of Spokane, State of Washington; that defendant subsequently became and now is a resident of the State of Wyoming, and that defendant has been a resident of this state continuously for more than five years prior to the commencement of this action, and said plaintiff is therefore barred and estopped from maintaining said action."

The defendant's third defense was similar except in lieu of the words "was contracted in the State of Washington" the words "was incurred and accrued in the State of Washington" are used.

Replying to these defenses the plaintiff alleged:

"That defendant, in writing, on or about the dates as follows: June 15, 1933; November 20, 1933; July 21, 1934; January 20, 1935; July, 1935; October 12, 1936; January 9, 1937; acknowledged the indebtedness represented by the promissory note set forth in the petition herein, and promised to pay the same; that said acknowledgments and promises were made in writing by defendant after he became a resident of the State of

Wyoming, and defendant is therefore barred and estopped from setting up the statute of limitations as alleged in said second defense."

It seems to be conceded by the parties hereto that the contract was one made in the State of Washington.

The trial of the cause was to the court without a jury. The defendant introduced no evidence whatsoever. The district court found generally in favor of the plaintiff and entered judgment for the full amount claimed to be due on the note, including interest, together with a $75.00 attorney's fee.

The Wyoming statutes pertinent are as follows: Sections 89-408, 89-409, and 89-421, which read respectively:

Sec. 89-408. "Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action accrues."

Sec. 89-409. "Within ten years an action upon a specialty or any contract, agreement or promise in writing; and upon all foreign claims, judgments or contracts, expressed or implied, contracted or incurred and accrued before the debtor becomes a resident of this state, action shall be commenced within five years after the debtor shall have established his residence in this state."

Sec. 89-421. "When payment has been made upon any demand founded on contract or a written acknowledgment thereof, or promise to pay the same has been made and signed by the party to be charged, an action may be brought thereon within the time herein limited, after such payment, acknowledgment or promise."

Plaintiff introduced in evidence a number of letters written by the defendant to various representatives of the owners and holders of the note aforesaid or to its payee, said letters being submitted by the plaintiff as constituting an acknowledgment of the indebtedness within the terms of the statute, Section 89-421, supra. There were three letters written during the year 1933, one on May 22, one in response to a letter from a rep-

resentative of the payee bank dated June 15 and typewritten on the back of that letter, and one on November 20. Other letters were written by the defendant as aforesaid on July 21, 1934, January 20, 1935, July 22 of the year last mentioned, October 12, 1936, and January 9, 1937.

It is intimated that the court was in error in admitting in evidence some of these letters, especially those written more than five years preceding the date of the bringing of this action.

37 C. J. 1248, Section 775, says that:

"Letters are frequently received in evidence, especially in connection with other evidence, even though their contents, standing alone, may not be sufficient to show an acknowledgment or new promise, or even though they were written more than the statutory period before suit; but in some cases they have been excluded on account of the date on which they were written."

In Lang v. Gage, 66 N. H. 624, 32 A. 155, it was held that the defendant's letters acknowledging the debt, though not written within the statutory period before suit, were admissible to prove that he acknowledged the debt within such period. In Quincy v. Blanchard, 37 R. I. 296, 90 A. 209, it was decided that letters written more than the statutory period before suit were admissible as tending to fix the amount due and also aid in construing later correspondence, upon which plaintiff relied as establishing a new promise. The court employed this language in dealing with the matter:

"The evidence of a new promise relied upon by the plaintiff consists of certain letters written by the defendant, which were severally accompanied by remittances of money. These letters were submitted to the jury as evidence of a new promise. The first letter, containing an inclosure of $15, was dated March 19, 1890. If we assume that this letter contained a promise

to pay the debt, and that the defendant intended that the remittance inclosed should be indorsed upon the note in question, it would not be evidence of a new promise to pay the balance now due, for the reason that such new promise, if made, would also have become barred by the statute of limitations. This letter, however, would be admissible as evidence tending to fix the amount due on the note and might be useful in construing the later correspondence, upon which the plaintiff relies to show a new promise. The correspondence, however, between the parties was resumed some years later, and, from November 1, 1907, down to and including March 4, 1908, the defendant wrote to the plaintiff five letters, and subsequently another letter, without date, making six in all. All of the letters, we think, were properly admitted."

See, also, Hunt v. Lyndonville Savings Bank & Trust Co., 103 Fed. (2d) 852. We see nothing amiss in the court's rulings relative to the correspondence introduced in evidence.

Other contentions advanced by the defendant are thus stated: "If the letters introduced by plaintiff do constitute a promise or acknowledgment on the part of the defendant, the plaintiff was mistaken in bringing the action on the note instead of the new cause of action, and the trial court committed prejudicial error in entering judgment against the defendant on the note. If the letters do not constitute a promise or an acknowledgment on the part of the defendant, then the plea of the defendant as to the statute of limitations is good and the trial court likewise committed prejudicial error in entering judgment against the defendant." It is additionally claimed that the letters received in evidence "fall far short of what is required to repel the effect of the plea of the statute of limitations."

So far as the question whether the plaintiff should have pleaded its cause of action otherwise than as indicated above, it is not urged that the point has received the direct attention of this court. The cases of Cowhick

v. Shingle, 5 Wyo. 87, 37 P. 689, and Smith v. Smith, 39 Wyo. 107, 270 P. 174, are cited as indicating that the plaintiff was mistaken in its pleadings, but in neither of those cases was there any decision of the matter now before the court, nor was it necessary. However, in Bank v. Maika, 16 Wyo. 141, 92 P. 619, it was pointed out that "statutes of limitation go to the remedy and not to the cause of action, and such being the case an action upon a contract is governed by the lex fori or the law of the place where the action is brought."

Citing many cases, 37 C. J. 1141 says:

"Numerous cases maintain that the statute does not extinguish the debt but only bars the remedy and the new promise (and) removes the bar of the statute thereby enabling plaintiff to recover on the original contract, and does not create a new substantive cause of action."

The same text, 37 C. J. 1203, further remarks:

"Where the usual practice of declaring upon the original cause of action is followed, plaintiff is under no obligation to anticipate the defense of limitations by setting forth in his complaint the payments or new promise on which he relies to take the case out of the operation of the statute."

In Boyd, Adm'r. etc. v. Hurlbut, Adm'x. etc., 41 Mo. 264, 269, the court said:

"Another position has been assumed by counsel, and that is, that the action should have been brought upon the promise, and not upon the original contract. Upon this point there have been conflicting decisions, but upon reason and the decided weight of authority we think the action was properly brought on the original contract or cause of action. The statute of limitations does not annihilate the debt, but suspends the remedy; the promise does not give any new cause of action, but simply revives the old cause, and is of no other use than to prevent the bar of the statute—Leaper v. Talton, 16

East. 423; Yea v. Fouraker, 3 Burr. 1099; Sluby v. Champlin, 4 Johns, 451; Shippey v. Henderson, 14 Johns, 178; Baxter v. Penniman, 8 Mass. 133; Lord v. Shaler, 3 Conn. 131."

In Frisbee v. Seamen, 49 Iowa 95, 98, the court in discussing the point here involved announced that:

"This action is not brought on the admission or new promise. Indeed, we regard the settled and better doctrine to be that the action should in all instances be brought on the original cause of action, and not on the new promise."

The text of Bates (Ohio) Pleading and Practice, (4th Ed.) Page 886, Section 949, says that:

"The weight of authority allows the action to be brought on the original claim, either by considering the discharge as a suspension of the remedy, or in one or two cases by considering the new promise as a revivor of the original claim. In these cases, a reply of new promise is not a departure."

And at Page 1709 reiterates that:

"It may with justice be said that the new promise merely prolongs the time, or waives a privilege, or acts on the remedy only, and hence that counting on the original claim is alone logically correct. At all events, the vast weight of authority recognizes that counting on the original liability is at least proper. And so although the bar was complete before the new promise, and such is the Ohio law. * * *
"The Ohio doctrine is that although the debt was barred at the time of the new promise, it is proper to count on the original claim."

In Spencer v. Hemmerde, 2 App. Cas. (1922) 507, a decision rendered by the English House of Lords, Lord Sumner in the course of an exhaustive review of the doctrine in that jurisdiction touching the particular point in which we are at present interested, said that he found "the great preponderance of the cases is against regarding the new promise as a new cause of

action, and it seems to me that reason also is against it. Surely the real view is, that the promise, which is inferred from the acknowledgment and 'continues' or 'renews' or 'establishes' the original promise laid in the declaration, is one which corresponds with and is not a variance from or in contradiction of that promise."

We conclude, therefore, that it was proper for plaintiff to sue in the instant case upon the original obligation, relying upon a reply, after the bar of the statute of limitations had been alleged in defendant's answer, avoiding that bar through the claim of an acknowledgment of the indebtedness under Section 89-421, supra.

Whether the letters written and signed by the defendant constituted an acknowledgment under the terms of the Section last mentioned, we deem the following briefly reviewed authorities of material aid in disposing of the question:

Where the defendant relied upon the statute of limitations and had written and sent a letter to the plaintiff within less than five years (the statutory period there involved) next before the commencement of the action on a promissory note, stating concerning that obligation: " 'Alvah (meaning the co-defendant in this case) is a queer man about his business and debts; cares but little what you say to him.' 'You should write him a sharp letter, and demand of him an indorser there,' (meaning in Maine, where the plaintiff, Mrs. Dyer, lived). 'I do not want to be held longer on that note.' " The trial court held that this was an acknowledgment under a statute worded very like Section 89-421, supra. Affirming this action, Mr. Justice Valentine,—with whom concurred the Chief Justice, Judge Horton, and Mr. Justice Brewer,—said in Elder v. Dyer, 26 Kan. 604:

"In Kansas, all that is necessary to take a cause of action founded upon contract out of the operation of the statute is, that there should be an acknowledgment

of 'an existing liability' on the original debt or claim; and then when the action is brought, it is brought not upon the acknowledgment, nor upon any new promise, but it is brought upon the original debt or claim. * * * *

"Our statute, to revive a debt or claim, requires only 'acknowledgment of an existing liability' on the particular claim in controversy, and this acknowledgment may be in any language which the party making it desires to use. No set phrase or particular form of language is required; *anything that will indicate that the party making the acknowledgment admits that he is still liable on the claim, that he is still bound for its satisfaction, that he is still held for its liquidation and payment, is sufficient to revive the debt or claim; and there is no necessity that there should also be a promise to pay the same, either express or implied.* Of course we know that an acknowledgment of an existing liability on an honest debt or claim generally raises an implied promise or contract to pay the same; but whether it does or not, is not a question to be considered in this state. The statute says nothing about an implied contract or promise, and the action, if revived at all, is not to be brought on the implied contract or promise, but only on the original liability. In the present case the defendant P. P. Elder admitted the execution and existence of the promissory note sued on; he admitted that it was honest and just in its inception and creation; he admitted that it was not paid at the time he wrote the letter to he plaintiff, and he wrote the letter to get an indorser on the note; or, in other words, to obtain another surety for the debt, and have himself released, as he in fact was only a surety; and then he says, 'I do not want to be held longer on that note.' Now, taking the entire language of the letter and construing it all together, is it not equivalent to saying, 'I am now held on the note, but I do not wish to be held any longer than it will be necessary for you to obtain a new surety on the debt?' He did not say that he was not liable on the note. He did not refrain from saying anything about his liability—that is, he was not merely silent with reference to his liability; and then did he not in fact say, although not in the most direct form, that his liability still continued? And if he *did say this*, it would seem to be all that was necessary to revive the debt." (Italics ours)

In Pracht v. McNee, 40 Kan. 1, 18 P. 925, the letter of the debtor submitted to the court as an acknowledgment of the debt to prevent the statute of limitations from barring the action read:

"James McNee, Cottonwood Falls: I will turn you over Farmers' notes for the note you hold against me,—the Fign note. Let me hear from you. F. Pracht."

Concerning this letter the opinion stated:

"The first note above mentioned was the only note held by the plaintiff in which the defendant had any interest, and was the only Fign note, or Finn note, held by him; and was the note which the evidence shows the defendant had reference to when he sent the postal-card. * * * *

"Second, the sending of the postal-card by the defendant to the plaintiff was an 'acknowledgment of an existing liability, debt, or claim,' within the meaning of section 24 of the Civil Code, and therefore the time for the complete operation of the statute of limitations was extended for five years after that time. Elder v. Dyer, 26 Kan. 604."

Similarly a letter reading:

"Dear Sir and Friend: Yours enclosing deed to execute rec'd. You don't say anything about cancelling my note. I am willing to make the deed, but must have the note and mortgage released and note returned to me. Yours truly, T. J. Healy.",

was held in Disney v. Healy, 73 Kan. 326, 85 P. 287, to be sufficient as an acknowledgment to lift the bar of the statute, the court saying:

"We think this is sufficient acknowledgment of an indebtedness to toll statute, being, in effect, a proposition to deed land in consideration of the release of the note and mortgage and the return of the note."

In Manchester et al. v. Braender, 107 N. Y. 346, 14 N. E. 405, it appeared that the New York Code, Section 395, provided that an acknowledgment in writing,

signed by the party to be charged, should be necessary to remove the case out of the operation of the statute of limitations. The defendant, being indebted to plaintiffs, gave them orders on a third party for the amount of the debt. He then abandoned his contract with the third party, and the orders thus given were never paid. Yet, it was held that the orders thus delivered were such an acknowledgment of the debt as would remove the statute's bar.

So in Lincoln-Alliance Bank & Trust Co. v. Fisher, 286 N. Y. S. 722, the court stated the facts and the law applicable thereto thus:

"Pursuant to a letter of inquiry and warning that respondent's collateral would be sold and an action brought for any balance due on the note, respondent wrote plaintiff the following letter: 'Received your letter this morning and very sorry the condition of things both for yourself and myself. Shall be in within a few days to see you, but am sending Mr. Fisher's address on to you which is: St. George Hotel, Dallas, Texas. I wish you would write soon to him and enforce it very strongly that he must take care of it, or it will take all I have.' Our question is whether this letter is an 'acknowledgment' within section 59, for it is not claimed to contain a 'promise.' We deem the correct rule to be that in order to constitute an acknowledgment, the writing must recognize an existing debt, and should contain nothing inconsistent with an intention on the part of the debtor to pay it. Manchester et al. v. Braedner, 107 N. Y. 346, 349, 14 N. E. 405, 1 Am. St. Rep. 829. The document need contain nothing more than 'a clear recognition of the claim as one presently existing.' In re Gilman, Son & Co. (D. C.) 57 F. (2d) 294, 296. Under this rule, we find an 'acknowledgment' in this letter. The word 'it' in the phrase 'he must take care of it' must refer to the $10,000 note and to say that the following words, 'or it will take all I have,' refer to the collateral only is a strained construction. There is nothing in the letter inconsistent with respondent's intention to pay and an admission of respondent's obligation to pay the $10,000 note is implicit in the document taken as a whole."

A letter sent by the defendant in reply to plaintiff's demand for the payment of a bill for legal services stating, "I couldn't find the amount of your fee in ready money, as my credit at the bank is taxed and I cannot anticipate my income. I can assume your note at this bank in payment of yours and my obligation," was held to be an unqualified "acknowledgment" of a debt, from which a promise to pay could be implied sufficient to remove the bar of the statute of limitations, and that the reference to plaintiff's note payable to the defendant was merely an assertion of a cross-claim and not an offer of compromise. For this ruling Nesbit v. Galleher, (Va.), 5 S. E. (2d) 501, is authority.

In Spencer v. Hemmerde, supra, the letter before the House of Lords, and there relied upon to relieve against the statute's operation, contained this language:

"It is not that I won't pay you, but that I can't do so. It is important that I should see you and explain the situation, and I shall therefore ring you up tomorrow to make an appointment.

"What I wrote was not that I saw no prospect at present of being able to repay the capital, but that I saw no prospect of being able to repay the capital at present. The condition of things at the Bar is such that the vast majority of us will be getting into debt rather than out of it.

"I have a good deal to talk to you about, and nothing can be gained by flying to solicitors."

And it was held, reversing the decision of the Court of Appeal, that such letter was a sufficient acknowledgment to take the case out of the statute, and Lord Sumner, in the course of his very able opinion, said:

"It is unnecessary for me to criticise the respondent's language word for word after what your Lordships have already said. It amounts, in my opinion, to the statement, 'you affirm my continuing indebtedness, and I do not deny it; be it so. I am now without funds, but I do not exclude the possibility of paying at some time.'

The first words clearly acknowledge the debt; the latter neither deny it, nor negative the acknowledgment nor impose conditions on the liability. After all a liability is not nullified because the debtor has no means."

Turning now to the letters offered and received in evidence in the case at bar, which were written by the defendant, as aforesaid, and as described above, we find that on the back of a letter from the Conservator of The Old National Bank & Union Trust Co., the note's payee, which letter under date of June 15, 1933, reads:

"Dear Dr. Bunten:
The interest referred to in your letter of a short time ago has not been received, nor have you forwarded any amount to apply on your indebtedness.

"We realize that conditions are not like we would like to have them, but there is no reason why some of your income could not be used to reduce this indebtedness. When it was loaned to you while you were in Spokane, it no doubt was very helpful to you, and we feel that you should make every effort to do something about its repayment.",

the defendant responded in part:

"In answer to this letter I wish to state that I very much appreciate the loan of this money and I will pay it every cent back to you. I wish I could do it now. As I stated before the clinic I joined here did not collect enough to carry the overhead so I wasn't getting enough to live on so I opened my own office last month. Naturally in so short a time I have not collected expenses yet so I have no income yet to even pay you a dime on the note."

Under date of October 12, 1936, the final paragraph of the letter written by the defendant to his creditor's agent, one Roy S. Shea, contained this language:

"I lost $2500 in a place there at Spokane as I couldn't hold it and spent $6000 cash I had saved up trying to get started there. Collections run 10% while I was there so I had to give it up. I will give you a list of the accounts that still owe me there and if you can get

anything from them you may apply it to the note. That is the best I can do."

Again under date of January 9, 1937, the defendant appears to have sent his creditor a financial statement, his letter reading in part:

"After you look this statement over you will see that I have a heavy load which I am trying to carry here. This statement does not include your $600 note. Had I been able to collect the money due me the last six years I wouldn't owe anyone and would have money besides, but when I couldn't collect I couldn't pay."

Taking all of these statements together, and especially the one from the letter of October 12, 1936, we think it may be fairly said that a reasonable and sensible interpretation of the language contained in this correspondence, viewed through the lens supplied by the foregoing authorities, would, we think, logically permit the district court to find generally in favor of the plaintiff, as was done, thereby deciding that the defendant had acknowledged an existing indebtedness to the plaintiff, as required by Section 89-421, supra, and thus removing the statutory bar to plaintiff's action. From the letter of October 12, 1936, aforesaid, it is apparent that the defendant recognizes an indebtedness and suggests a method whereby a payment on that indebtedness could be obtained by his creditor. We are not able to find in the letters thus written by the defendant any statements which intimate that he regards the indebtedness as nonexistent. Many excuses are given why the indebtedness cannot at present be paid, but it seems to us that is all.

We accordingly are obliged to affirm the judgment of the district court of Laramie County.

*Affirmed.*

KIMBALL and BLUME, JJ., concur.