[No. 18567.  Department One.  September 18, 1924.]

MAY BERTELOOT, as *Administratrix, etc., Appellant,* v. LEONA P. REMILLARD, *Respondent.*[1]

LIMITATION OF ACTIONS (74, 75)—PART PAYMENT—REVIVAL OF DEBT—INTENT—POWERS OF TRUSTEES—CONSTRUCTION OF WRITINGS. The statute of limitations is not tolled by payments of interest to trustees to whom the debtor conveyed his property for the benefit of creditors by a trust mortgage vesting in the trustees full authority to make extensions of time for the payment of the indebtedness; since such recital does not show a "clear and unequivocal intention" to authorize the trustees to revive the debt, but was merely an incidental aid in the care of the property.

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered December 18, 1923, in favor of the defendant, dismissing an action on promissory notes, tried to the court and a jury. Affirmed.

*Shorett, McLaren & Shorett* and *Edward R. Taylor,* for appellant.

*Evans & Watson,* for respondent.

MACKINTOSH, J.—We will speak of the appellant as though she were the payee of certain notes hereinafter referred to, though in reality she is the administratrix of the estate of the deceased wife of the deceased payee.

The respondents, in 1911, executed and delivered to the appellant two promissory notes, one for $4,900 and the other for $400, both to mature in one year, and this action was commenced in 1923 to recover on these notes. The defense against them is that they are barred by the statute of limitations. In reply to this the appellant relies on a written trust agreement and mortgage made by respondents in 1914, under which

[1] Reported in 228 Pac. 690.

it is claimed a payment was made in 1920 upon each of the notes by the trustees named in the trust agreement, it being the appellant's contention that these payments tolled the running of the statute. It appears from the trust agreement that the respondents were unable to pay various debts, approximating $18,000, and therefore they mortgaged all their property to two trustees for the benefit of such creditors as might ratify the agreement. A list of the creditors was set out in the agreement and contained the name of the appellant and referred to the two notes. The agreement provided that the revenue derived from the operation of respondents' property was to be applied, first, on its necessary operating expenses, and second, that the excess should be paid to the creditors who ratified the agreement, ratably according to their indebtedness. The trust mortgage made in conformity with the provisions of the trust agreement contained this clause, the like of which does not appear in the agreement itself:

" . . . and this mortgage vests in said trustees, for their own benefit and for such other creditors as may ratify this transaction, full authority to make such extension of time for the payment of the indebtedness and to make such future advances as in their judgment seems best to the interests of all concerned."

The appellant accepted the terms of the agreement. In 1920, the two trustees made a payment of interest to the appellant as the holder of the two notes: $360 to apply on the larger and $32 on the smaller note. The question is, did these payments toll the running of the statute and revive the debt.

Upon this question there seems to be a diversity of opinion in the different jurisdictions, but the better rule, and the one which is indicated by the prior de-

cisions of this court, would seem to be that, where property is turned over to third parties to be applied upon an indebtedness, such payments made by persons to whom the property has been delivered do not toll the statute of limitations unless the agreement clearly indicates that it was the intention of the debtor that the transferee should act as his agent with power to revive the whole debt; in other words, that it must clearly appear that the payment is a voluntary partial payment. One of the leading cases cited by the appellant in favor of a contrary rule is that of the Colorado court of appeals, reported in 1 Colo. App. 468, 29 Pac. 465 (*National State Bank of Boulder v. Rauland*), where the court held that, where a person constitutes another his agent with authority to take his property and apply the proceeds to the payment of an indebtedness, a payment made in pursuance of such authority must be regarded as voluntary, and therefore as enough to take the case out of the statute of limitations. So far as our investigation shows, this case was never afterwards cited by any court, nor has it ever been referred to by the Colorado courts, but we find the supreme court of Colorado, in *Holmquist v. Gilbert,* 41 Colo. 113, 92 Pac. 232, announcing the contrary rule, for in that case, where a trustee sold lands under the terms of a trust deed authorizing the sale and application of the proceeds to the payment of a note, and the proceeds were endorsed as a payment on the note, it was held the endorsement did not raise an implied promise of the maker to pay the balance due on the note, and that the payment was not voluntary, the court saying:

"It does not follow, however, that he was such an agent of the maker that the payment became the voluntary act of the maker himself, nor that the payment was such an acknowledgment of the existing indebted-

ness that the law implies a promise to pay the balance. We think it must be considered as an involuntary payment, and that it was not 'accompanied by circumstances amounting to an absolute, unqualified acknowledgment of the indebtedness from which a promise may be inferred to pay the remainder.' "

Among many opinions to the same effect is the opinion of the supreme court of Michigan in *Parsons v. Clark,* 59 Mich. 414, 26 N. W. 656, and the supreme court of North Carolina, in *Battle v. Battle,* 116 N. C. 161, 21 S. E. 177. To the contrary has been cited *Bosler v. McShane,* 78 Neb. 86, 113 N. W. 998, but we find that the Nebraska court recognizes that it has established a rule contrary to the weight of authority. The Massachusetts courts, in *Taylor v. Foster,* 132 Mass. 30; and *Buffington v. Chase,* 152 Mass. 534, 25 N. E. 977, cited by the appellant, were considering cases where the debtor had turned over to the payee of the notes collateral, from the proceeds of which application was to be made upon the indebtedness, and such application was made and it was held that the money received by the creditor would take the debt out of the statute of limitations. These cases on their facts may be distinguished from the case at bar, but even upon such facts the authorities are hopelessly divided. Those cases turn upon the question of whether the creditor, who was also the holder of the collateral, could, in any event, become the agent of the debtor and by making a payment to himself toll the statute of limitations, some of the courts holding such a payment could not be called a voluntary one, others that it could. But, as we have said, these cases are distinguishable from the situation here. The better rule would seem to be, therefore, as we have already stated, that it must clearly appear from the conveyance by the debtor to the trustees that the debtor in-

tends the trustees to have the power, as his agent, to toll the statute.

This court, in *Arthur & Co. v. Burke*, 83 Wash. 690, 145 Pac. 974, had the question of the tolling of the statute by partial payments before it, and held those payments must be voluntarily made under the authority of the debtor or ratified by him. The last section of the syllabus in that case states the rule as follows:

"A barred debt is not revived by part payment unless the circumstances show a clear and unequivocal intention on the part of the obligor to revive the whole debt; and assent to a revival of notes is not shown by the sale of goods and credit of the proceeds, without notice to the debtor, ten years after the notes were given."

That case, of course, does not present the same facts as in the case at bar, but facts similar to those discussed in the Massachusetts cases, *supra*, where an opposite result was announced by the Massachusetts courts.

The strictness with which payments alleged to have tolled the statute are regarded by this court is indicated by the opinion in the case of *Farmers & Mechanics Bank v. San Poil Consol. Co.*, 126 Wash. 137, 217 Pac. 707.

Under this rule it therefore becomes necessary to determine whether the agreement made by the respondents with the creditors shows "a clear and unequivocal intention" to authorize the trustees to bind the debtors to a revival of the various indebtednesses. The trust agreement itself is absolutely silent upon this question, and the only basis for an argument that there was such intention manifestly arises from the clause which we have quoted, contained only in the trust mortgage. Conceding that this clause in the mortgage is to be given effect (although a persuasive

argument can be made that the agreement itself is the only instrument to which reference can be made), yet that clause does not manifest such clear and unequivocal intention. It apparently refers only to the method by which the trustee should handle the property. It would be a violent construction to draw from that clause an intention to empower the trustees to acknowledge a debt which was already barred by the statute, or to set the statute in motion anew by making a payment upon an indebtedness. As was said by the trial court in his memorandum opinion upon this point:

"the language used was for the purpose of merely aiding the parties in carrying out the terms of the agreement and it is only incidental to the main purpose—the care of such property until such time as the obligation could be extinguished in full."

We are satisfied that the notes in question were barred, and the judgment is affirmed.

MAIN, C. J., HOLCOMB, TOLMAN, and PARKER, JJ., concur.