[No. 30164.   Department Two.   August 14, 1947.]

C. A. EASTON, *Respondent,* v. HOMER BIGLEY *et al.,*
*Appellants.*[1]

*Sullivan & Pruzan,* for appellants.

*H. A. Martin,* for respondent.

[1]Reported in 183 P. (2d) 780.

JEFFERS, J.—Four demand promissory notes form the basis of the four causes of action contained in the complaint filed by C. A. Easton, in the superior court for King county, against Homer Bigley and Reva Bigley, his wife, on November 2, 1945. It was alleged that each of the four notes had been assigned by Barto & Company, a corporation, payee, to C. A. Easton, without recourse, and that plaintiff was the holder of each of such notes.

The note in the first cause of action was executed by Bigley and wife, in favor of Barto & Company, on September 9, 1937, and was for the principal sum of five hundred dollars. It was alleged that various payments of interest had been made on this note, the last payment having been made on December 17, 1943; that there was due on this note a balance of five hundred dollars, principal, together with the sum of $456.75, interest, calculated to September 18, 1945.

The note which forms the basis of the second cause of action was for three hundred dollars and was executed by Bigley and wife on May 23, 1938. It was alleged that a payment of interest was made on this note on December 17, 1943, and that there was due and owing the principal sum of three hundred dollars, and interest in the sum of $253.60, calculated to September 18, 1945.

The third cause of action was based upon a note for thirty-five dollars, executed and delivered by Homer Bigley to Barto & Company on May 31, 1938. It was alleged that a payment of interest in the sum of five dollars was made upon the note on December 17, 1943, and there was due and owing on this note the principal sum of thirty-five dollars, together with the sum of $25.65, interest, calculated to September 18, 1945.

The fourth cause of action was based upon a note for ten dollars, executed and delivered by Homer Bigley to Barto & Company on July 16, 1938. It was alleged that interest on this note in the sum of $1.32 was paid on December 17, 1943, and that there was due and owing on such note the principal sum of ten dollars, and $7.28, interest, calculated to September 18, 1945.

Defendants Bigley and wife, by their answer, admitted the execution of the notes referred to in the four causes of action set out in the complaint, and denied all the other allegations in the several causes of action.

As a first affirmative defense, defendants alleged that the interest payment referred to in each cause of action as having been made on December 17, 1943, was not made by either of the defendants; that in May, 1938, defendants deposited with Barto & Company a certificate of trustee stock, bearing interest coupons; that the alleged interest payment referred to in each cause of action as having been made on December 17, 1943, was made by Barto & Company clipping such interest coupons and applying the proceeds thereof to the payment of interest, without the knowledge or authority of the defendants, and without any notice to them. It was further alleged that such interest payments were not voluntary payments on account by either defendant on December 17, 1943; that no voluntary payments had been made by either defendant on any of such notes since 1938; and that the statute of limitations had run against each note.

As a second affirmative defense, it was alleged that each of the notes referred to in the complaint had been fully settled and paid.

Plaintiff, by his reply, denied the allegations of defendants' first and second affirmative defenses and alleged that, during the year 1938, defendants delivered to Barto & Company a certificate known as Trustee Standard Oil-shares, with attached coupons coming due thereafter on January 15th and July 15th of each year; that, when the certificate was delivered to Barto & Company, it was delivered under an oral agreement between Barto & Company and defendants that Barto & Company would collect the installments on January 15th and July 15th of each year and, as collected, credit the payments upon defendants' indebtedness represented by the notes herein sued upon; that Barto & Company did so collect such payments and credit them on the indebtedness, with the full knowledge and consent of defendants.

The cause came on for hearing before the court on October 23, 1946, and, after a hearing, the court, on December 13, 1946, made and entered its findings of fact, conclusions of law, and judgment.

The court concluded that plaintiff was entitled to judgment against defendants on his first cause of action in the sum of five hundred dollars, with interest thereon from September 9, 1937 (date of note), at twelve per cent per annum, less $24.75, interest payments credited upon the note; on his second cause of action, in the sum of three hundred dollars, with interest thereon from May 23, 1938 (date of note), less ten dollars, interest payment credited December 17, 1943; on his third cause of action, in the sum of thirty-five dollars, with interest thereon at the rate of twelve per cent per annum from May 31, 1938 (date of note), less five dollars, interest payment credited on the note December 17, 1943; and on his fourth cause of action, in the sum of ten dollars, with interest thereon from July 16, 1938 (date of note), at twelve per cent per annum, less $1.32, interest payment credited on note December 17, 1943.

Judgment was entered in accordance with the conclusions, and this appeal by defendants followed.

Appellants assign as error the holding of the court that the statute of limitations had not run; the finding that appellants had made payments on the notes; and the entry of conclusions of law and judgment in favor of respondent.

Respondent called as a witness Mr. Barto, who stated he knew appellant Homer Bigley. The four notes hereinbefore mentioned were marked as exhibit No. 1. Counsel for appellants admitted the execution of the notes. Mr. Barto then stated that payments were made on the notes, and that such payments were endorsed on the back of the notes on the dates they were made.

It may be stated here that we are concerned with the endorsement made upon the back of each note on December 17, 1943. The endorsements show payments on the notes on that date as follows: On the $500 note, $10; on the $300

note, $10; on the $35 note, $5; and on the $10 note, $1.32. The notes were admitted in evidence.

Mr. Barto testified in part as follows:

"Q. Mr. Barto, referring to the note for $500.00, all of the payments noted on the back are 1938 except one for $10.00 to apply on interest, and you have that dated December 17, 1943? That is correct, is it not? A. Yes. Q. How was that payment made in 1943? A. That was a coupon from a certificate that had been left with us by Mr. Bigley of Standard Oil shares, a kind of an investment trust proposition that had some annual dividends on it. Q. When did the defendant leave this coupon bearing stock with you? A. In 1938, I believe it was. Q. In 1938? A. Yes. Q. And why was that left with you? A. Well, it was left with us for the purpose of crediting these payments on his account as they came due. THE COURT: The purpose of what, Mr. Barto? THE WITNESS: It was left with us— the dividends from this certificate were supposed to help keep up the interest on his account. It was left with us as a collateral with the understanding that those payments would be credited. Q. [by counsel for appellants] Was that left with you as partial payment of the notes or as security? A. Well, it was left as security, I would say. Q. Will you tell us what was said by you and what was said by Mr. Bigley at the time the stock was handed to you? A. Well— Q. Strike that. Let me ask you first: Whose suggestion was it that the stock be left with you, yours or the defendant's? A. Well, I didn't know he owned it until he told me about it, of course. Q. When he told you about it, you asked him to bring it in? A. Yes, because the other security that he had had or expected to have didn't materialize. Q. When you told him to bring it in, what was said by you at that time as to the purpose for bringing it to you? A. Well, I can't remember what was said at the time. It was brought in for the purpose of partially securing the account and partially taking care of the interest on the account. Q. What specifically was said as to what you were to do with the interest coupons as they came due? A. Well, I was instructed to use them as they came due and credit them on the account. Q. Why was there nothing credited on the notes from 1938 to 1943 then? A. Well, the amount that was due on them was very small, I think—   . . .

"Q. When you cashed those coupons in 1943 and applied them on the notes, did you at that time get the defendant's

permission to do so? A. I didn't get any further permission than I had, than in the first case, first instance. Q. In other words, you didn't contact the defendant in 1943 with regard to your right to clip the coupons? A. No. Q. The only transaction then that you had with the defendant regarding the stock and the attached coupons was in 1938 when he gave them to you? A. That is right. Q. And the 1943 endorsement of payment on interest of $10.00 on this $500.00 note is part of the proceeds then of interest bearing coupons that you clipped in 1943? A. That is right. Q. Based on consent that was given to you by the defendant in 1938 when he handed you the stock? A. That is right. Q. The $300.00 note has only one payment endorsed on the back, which is also the same day, December 17, 1943, $10.00? A. Part of the same. Q. That money came from the same source? A. Yes. Q. The $35.00 note has only one payment credited on the back, also December 17, 1943, for $5.00? A. Part of the same thing. Q. That came from the same source? A. Yes. Q. And the last note for $10.00 has only one payment credited on the back, dated also December 17, 1943, $1.32 to apply on interest? A. Yes. Q. That money also came from the same source? A. Yes. That made the total of $26.32, the total derived from the —THE COURT: Those four applications were the total of your collections? THE WITNESS: That is right. Q. [By counsel for appellants] In other words, from 1938 to 1943 nothing happened; and in December of 1943 you cashed in certain coupons attached to the stock and applied the proceeds to these four notes in accordance with the way you thought they should be applied? Is that right? A. Yes. Q. You did not receive any further permission from the defendant in 1943 as to how to apply the money? A. No. The only instructions I received from him is when he left it with me."

Mr. Barto was the only witness called.

The question presented by this appeal is whether the application upon the notes, on December 17, 1943, of the money realized from the interest coupons attached to the stock certificate, which certificate was left with Barto & Company in 1938 as security for the four notes, with instructions that, as the interest coupons came due, they were to be collected and credited on appellants' account, tolled the running of the statute of limitations.

Appellants contend such application did not toll the running of the statute, for the reason that in order to toll the running of the statute, the payment must be made under such circumstances as to show an intentional acknowledgment by the debtor of his liability for the whole debt *as of the date of payment,* from which arises a new implied promise, supported by the original consideration, to pay the residue.

Respondent contends that the application of the proceeds from the coupons tolled the running of the statute, his theory being that, when Homer Bigley instructed Barto & Company to collect on the security and apply the proceeds on the notes, Bigley made Barto & Company his agent for such purpose, and that the act of the creditor, Barto & Company, in applying the proceeds of the security on the debt, constituted a voluntary payment made by Bigley through his agent, Barto & Company.

Respondent cites no authority from this state to support the agency theory, and the cases cited by him from other jurisdictions proceed upon that theory.

In the case of *Arthur & Co. v. Burke,* 83 Wash. 690, 145 Pac. 974, after a consideration of many cases and the principles therein announced, we stated:

"The rationale of these principles is this: the payment must be made under such circumstances as to show an *intentional acknowledgment by the debtor of his liability for the whole debt as of the date of payment,* from which arises a new implied promise, supported by the original consideration, to pay the residue. . . .

"It has been usually held that where part payment of a note is made from money realized by the sale of collateral, a new promise is not to be implied *as of the date of the sale* of the collateral *nor as of any date later than the transfer of the collateral to the creditor. Wolford v. Cook, supra* [71 Minn. 77, 73 N. W. 706, 70 Am. St. 315]; *Brown v. Latham,* 58 N. H. 30, 42 Am. Rep. 568; *Jones v. Langhorne* (rehearing), 19 Colo. 206, 34 Pac. 997; *Thomas v. Brewer,* 55 Iowa 227, 7 N. W. 571; *Campbell v. Baldwin* [130 Mass. 199]; and *Leach v. Asher, supra* [20 Mo. App. 656]." (Italics ours.)

In the *Arthur & Co.* case, we then quoted from *Wolford v. Cook, supra,* as follows:

" 'Wolford's right to receive the proceeds of the collateral mortgages, and apply them in part payment of defendant's note, was acquired under and by virtue of the contract made at the time the collaterals were transferred to him. *His subsequent exercise of that right was not a voluntary payment made by the defendant from which a promise to pay the residue can be inferred.* The defendant had done nothing since he transferred the collaterals to Wolford in March, 1889. The fact that he made no objection when informed by Wolford that he had applied the proceeds of these collaterals on his note could not take the case out of the statute. He had no reason to object, and, if he had done so, it would have been futile. Wolford had merely exercised a contract right which he acquired in 1889. Defendant's passive acquiescence in the exercise of that right constituted neither a voluntary payment as of that date, nor a new promise in writing to pay the balance of the debt. *Harper v. Fairley,* 53 N. Y. 442; *Smith v. Ryan,* 66 N. Y. 352; *Brown v. Latham,* 58 N. H. '30.' " (Italics ours.)

We quote further from the *Wolford* case:

"The principle upon which part payment of a debt will take a case out of the statute is that such payment amounts to an acknowledgment of the existence of the debt, from which the law implies a new promise to pay the balance. To have that effect, the payment must be voluntarily made by the debtor in person who is sought to be charged with the effect of it, or by some one authorized by him to make a new promise on his behalf. It has been held, or at least intimated, in some cases, that a sale of collaterals made within a reasonable time after they are deposited with the creditor, and the application of the proceeds on the debt, will operate as a part payment *at the date of the receipt of such proceeds,* so as to interrupt the operation of the statute. This doctrine rests upon the mistaken idea that the creditor is thereby made the agent of the debtor for the collection or sale of the collaterals, ignoring the fact that the creditor cannot be made the agent of the debtor to such an extent as to make an act done by him [the creditor] operate as a new promise to himself, without which element a payment can never operate to remove

the bar of the statute. Wood, Lim. Act. § 101." (Italics ours.)

We have set out the last quotation from the *Wolford* case as showing more particularly the reason for the first quotation from that case above made.

This court, in the *Arthur & Co.* case, *supra,* after quoting from the *Wolford* case, *supra, Brown v. Latham, supra,* and 1 Wood, Limitations (2d ed.) 282 *et seq.,* stated:

"The grounds of the foregoing authorities seem to us sound, but it is not necessary to adopt them here. We need not go so far."

While it is true that the decision in the *Arthur & Co.* case was based on a factual situation which the court held did not require the application of the above principles, we are of the opinion this court clearly indicated in the case that it was not in accord with the agency theory contended for by respondent in the case at bar.

After a consideration of the cases, we are of the opinion that the rules as above announced in the *Wolford* case, *supra,* are the better rules and supported by the better reasoning, and we hereby adopt them as applicable to the facts in the instant case.

In the case of *Walker v. Sieg,* 23 Wn. (2d) 552, 161 P. (2d) 542, we quoted from the case of *Stockdale v. Horlacher,* 189 Wash. 264, 64 P. (2d) 1015, as follows:

" 'Where reliance is placed upon a part payment to remove the bars of the statute, the burden of proving the payment within the statutory period rests upon the party asserting it. *Arthur & Co. v. Burke,* 83 Wash. 690, 145 Pac. 974. Where circumstances are relied upon to toll the running of the statute of limitations, *they must show a clear and unequivocal intention on the part of the obligor to keep alive the debt. Berteloot v. Remillard,* 130 Wash. 587, 228 Pac. 690; *Abrahamson v. Paysse,* 159 Wash. 516, 293 Pac. 985.' " (Italics ours.)

The case of *Berteloot v. Remillard, supra,* announced the rule that where property is turned over to third parties to be applied upon an indebtedness, such payments made by the persons to whom the property

was delivered do not toll the statute of limitations unless the agreement clearly indicates that it was the intention of the debtor that the transferee should act as his agent *with power to revive the whole debt*; in other words, that it must clearly appear that the payment is a voluntary partial payment.

We are of the opinion that it does not appear in this case that it was the clear and unequivocal intention of appellants to empower respondent to revive the whole debt, or to set the statute of limitations in motion anew, but that the only purpose of the agreement between appellants and Barto & Company as to the application of the proceeds from the certificate was to instruct Barto & Company as to how the collateral should be handled; in other words, the application of the payments in 1943 by Barto & Company did not constitute a voluntary payment by appellants at that time, under circumstances showing an intentional reacknowledgment of the whole debt as of the date of payment.

For the reasons assigned, the judgment of the trial court is reversed and remanded, with instructions to dismiss the action.

MALLERY, C. J., STEINERT, ROBINSON, and HILL, JJ., concur.